**GREAT WESTERN BANK; the Bank of America, Creditors–Appellees,**

v.

**SIERRA WOODS GROUP, a California Limited Partnership, Debtor–Appellant.**

No. 90–16500.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 7, 1991.

Decided Jan. 13, 1992.

Lee S. Molof and Robert C. Vohl, Henderson & Nelson, Reno, Nev., for debtor-appellant.

Bruce T. Beesley, Gordon & Silver, Reno, Nev., for creditor-appellee Great Western Bank.

Roland K. Martin, Beckley, Singleton, et al., Reno, Nev., for creditor-appellee Bank of America.

Before POOLE, REINHARDT and FERNANDEZ, Circuit Judges.

FERNANDEZ, Circuit Judge:

Sierra Woods Group (Sierra Woods) appeals the district court's decision that Sierra Woods' proposed reorganization plan, which included negative amortization, was not "fair and equitable" under 11 U.S.C. § 1129(b). The bankruptcy court did not make specific factual findings regarding the fairness of the proposed deferral of

interest, but rather adopted a per se rule against negative amortization. The district court did not address the legal permissibility of negative amortization, but concluded based upon a review of the record that the proposed plan was not fair and equitable. We hold that the fairness of a reorganization plan that includes the deferral of interest must be determined on a case-by-case basis. Therefore we reverse the district court's decision and remand to the district court for further remand to the bankruptcy court so that the bankruptcy court may make factual findings concerning the fairness of the proposed plan.

## FACTUAL AND PROCEDURAL BACKGROUND

This dispute centers on the Chapter 11 reorganization plan proposed by Sierra Woods. Its only asset is a ten-year-old apartment complex located in Sparks, Nevada. Bank of America owns a note secured by a first deed of trust on the property. As of April 17, 1989, Bank of America was owed $4,098,000. Great Western Bank (Great Western) owns a note secured by a second deed of trust, and was owed $3,845,124.47 plus $103,124.47 in interest as of April 17, 1989. The terms of Great Western's note called for an adjustable interest rate 3% over the Federal Home Loan Bank of San Francisco Eleventh District Cost of Funds Rate. The note was fully amortized over 30 years and was to mature in the year 2015.

Originally Sierra Woods proposed a reorganization plan under which it would make interest-only payments of 8% to Great Western for the first three years, and would then make interest-only payments at the prevailing note rate for the remaining term. The deferred interest and principal payments would be capitalized and would incur interest at the existing note rate. Sierra Woods later modified this proposal to include interest-only payments for the first five years. For the first three years, Sierra Woods proposed to pay interest of 8% and allow interest in excess of that amount to accrue and be added to principal. After five years, the note would fully amortize over the balance of the term at the adjustable note rate. The result would be negative amortization for three years because during that time the debt would increase rather than decrease.

Sierra Woods presented its modified proposal at a bankruptcy court hearing. Great Western cited *In re McCombs Properties VIII, Ltd.*, 91 B.R. 907, 911 (Bankr. C.D.Cal.1988), for the proposition that the promise to make up lost interest payments is not the legal equivalent of having those interest payments today. Sierra Woods told the court that its accountants were prepared to testify that the stream of payments under its proposal was equivalent to the stream of payments under the original note. Great Western responded that the permissibility of negative amortization was a "legal issue," and argued that interest deferral was not appropriate "under any circumstances."

The bankruptcy judge ruled in favor of Great Western. He said:

I read the Code, and it's very clear, and I've always applied it in this manner.... [11 U.S.C. § 1129(b)(2)(A)(i)(II) requires that] Mr. Beesley's client receive, on account of his claim, deferred cash payments totaling at least the amount of this claim as of the debt on the effective date of the plan. And that means a payment today, the next deferred payment, and next deferred payment, and the next. That's all it's ever meant. And I'm interpreting it that way. And I don't think negative amortization even— it just doesn't comply with that....

Thereafter, the bankruptcy court confirmed a reorganization plan that required Sierra Woods to make timely interest payments at the market rate of interest. Sierra Woods appealed the bankruptcy court's ruling against deferral of interest to the district court. The district court examined the record and concluded that Sierra Woods had not honored its previous promises to pay Great Western, that the negative amortization proposal required a 100–percent value loan from Great Western to Sierra Woods, and that Great Western was in a secondary position to Bank of America on

the loan. According to the district court, "the bankruptcy court properly determined that the deferral proposed in the plan ... did not *under the circumstances* provide Great Western Bank with the equivalent of the present value of its claim ..." (emphasis added).

## JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction under 28 U.S.C. § 158(d). We review de novo the district court's review of a bankruptcy court decision. *In re Fowler*, 903 F.2d 694, 696 (9th Cir.1990). This court reviews the bankruptcy court's findings of facts for clear error and its conclusions of law de novo. *Id.*

## DISCUSSION

Under 11 U.S.C. § 1129(b), the bankruptcy court can confirm a plan of reorganization without creditor approval if the plan "does not discriminate unfairly, and is fair and equitable...." 11 U.S.C. § 1129(b)(1). The "fair and equitable" condition includes the requirement that the holder of a secured claim receive "deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property." 11 U.S.C. § 1129(b)(2)(A)(i)(II).

Sierra Woods argues that 11 U.S.C. § 1129(b) permits the deferral of interest, or negative amortization. Negative amortization refers to "a provision wherein part or all of the interest on a secured claim is not paid currently but instead is deferred and allowed to accrue," with the accrued interest added to the principal and paid when income is higher. *In re Club Associates*, 107 B.R. 385, 398 (Bankr.N.D.Ga. 1989). The extent of negative amortization depends upon the difference between the "accrual rate," or the overall rate of interest to be paid on a claim, and the "pay rate," or the rate of interest to be paid on a monthly basis. *Id.* Even when a debtor defers payments of interest on its debt obligation, the deferred amount can be capitalized at a rate of interest which enables the deferred amount to equal the present value of the creditor's allowed secured claim. Barry Schermer & Keith Bartz, *Negative Amortization and Plan Confirmation: Is it Fair and Equitable Under Section 1129(b) of the Bankruptcy Code?*, 8 Bankr.Dev.J. 1, 3–4 (1991). *See also In re Memphis Partners, L.P.*, 99 B.R. 385, 388 (Bankr.M.D.Tenn.1989) (with an appropriate interest rate, a negative amortization plan can mathematically provide present value).

### A. *The Bankruptcy Court Ruling and District Court Review*

The bankruptcy court did not make specific findings regarding the fairness of the proposed deferral of interest under § 1129(b), but rather objected to negative amortization on legal grounds. The bankruptcy court rejected appellant's proposal for the deferred payment of interest because, in that court's view, deferral of interest does not comport with the statutory requirement that secured creditors receive the present value of their claims.

The district court did not address the legal argument against negative amortization, but rather found support in the record for the proposition that in the context of this particular case the deferral of interest would not be fair and equitable. We have held, however, that the district court may not make its own factual findings when reviewing a decision of the bankruptcy court. *In re Hall, Bayoutree Assoc., Ltd.*, 939 F.2d 802, 804 (9th Cir.1991). The question of whether a reorganization plan is fair and equitable involves questions of fact. *In re Acequia*, 787 F.2d 1352, 1358 (9th Cir.1986). Because the bankruptcy court did not make factual findings on this issue, the district court erred when it independently determined that appellant's proposed plan was not fair and equitable. The district court should have decided whether the bankruptcy judge erred in adopting a blanket prohibition of negative amortization. If so, the district court should have remanded the case to the

bankruptcy court for the making of necessary findings regarding the fairness of the plan, rather than conducting its own review of the record. *In re Hall, Bayoutree*, 939 F.2d at 804.

B. *The Fairness of Negative Amortization under 11 U.S.C. § 1129(b)*

We have not previously decided whether negative amortization is permissible under 11 U.S.C. § 1129(b). See *In re Fowler*, 903 F.2d 694, 699 n. 6 (9th Cir. 1990), where we noted the existence of the issue. One court has ruled that deferral of interest is not fair and equitable under section 1129(b) if the payment rate falls below the market rate of interest. *In re McCombs*, 91 B.R. at 911. In *McCombs*, the debtor sought to "cram down" a reorganization plan under which interest would accrue at the market rate of 10.5%, but the debtor would make payments of 9% and accrue the difference until sufficient funds were available. The court indicated a willingness to accept deferral of interest only if the debtor's payments at least equalled the market interest rate. *Id.* at 911. The court stated that even if it could adjust the interest rate to reflect "this accrual concept," it would only be guessing at the proper adjustment. *Id.*

As the *McCombs* court seemed to acknowledge, even when the payment rate falls below market rate, the accrual rate can be adjusted in order to give creditors the present value of their claims. *See* Schermer & Bartz, 8 Bankr.Dev.J. at 3–4. Assuming that such an adjustment is possible, the *McCombs* court offered no reason why negative amortization should be deemed impermissible under 11 U.S.C. § 1129(b) whenever the payment rate on a secured claim falls below the market rate.

Our research has discovered no other court which has accepted the reasoning of the *McCombs* court. Rather, courts have decided on a case-by-case basis whether negative amortization under a given plan was fair and equitable, and have treated the market rate of interest as a necessary, but not sufficient, factor in that alchemy. *See, e.g., Matter of D & F Constr. Inc.*, 865 F.2d 673, 676 (5th Cir.1989) (refusing to hold that negative amortization will never be fair and equitable); *In re Apple Tree Partners, L.P.*, 131 B.R. 380, 395 (Bankr. W.D.Tenn.1991) (rejecting *McCombs'* per se rule against negative amortization); *In re Orfa Corp. of Philadelphia*, 129 B.R. 404, 418 (Bankr.E.D.Penn.1991) (deferral of interest not per se objectionable under 1129(b)); *In re Memphis Partners*, 99 B.R. 385, 388 (Bankr.M.D.Tenn.1989) (negative amortization not fair and equitable under the circumstances of the case); *In re Club Assoc.*, 107 B.R. at 398 (confirming a plan under § 1129(b) despite negative amortization; terms of original contract provided for negative amortization); *In re Century Inv. Fund VII Ltd. Partnership*, 96 B.R. 884, 891 (Bankr.E.D.Wis.1989) (negative amortization not necessarily unfair per se); *In re EFH Grove Tower Assoc.*, 105 B.R. 310, 313–14 (Bankr.E.D.N.C.1989) (reorganization plan including negative amortization unfair under the circumstances); *In re Spanish Lake Assoc.*, 92 B.R. 875, 878 (Bankr.E.D.Mo.1988) (rejecting *McCombs'* per se rule and listing elements to be considered on a case-by-case analysis of the fairness of negative amortization); *In re Anderson Oaks (Phase I) Ltd. Partnership*, 77 B.R. 108, 110 (Bankr.W.D.Tex. 1987) (while negative amortization might not always be fatal to confirmation of plan, it is fatal in this case).

In all of the above cases, save one, the court concluded that negative amortization was not fair and equitable under the circumstances, and the case approving of the deferral of interest concerned a contract that already provided for negative amortization. *In re Club Assoc.*, 107 B.R. at 398. Thus while most courts have been reluctant to adopt a per se rule against negative amortization, there are commonly held reservations about the practice. That is not surprising because plans of that type tend to be fraught with pitfalls that unfairly endanger creditors. Even so, we see no reason to conclude that negative amortization is per se impermissible under 11 U.S.C. § 1129(b). We hold that the fairness of a reorganization plan that includes negative amortization should be determined on a

case-by-case basis. *In re Apple Tree Part-ners* contains a list of some of the factors that are relevant to this determination:

    1. Does the plan offer a market rate of interest and present value of the deferred payments;

    2. Is the amount and length of the proposed deferral reasonable;

    3. Is the ratio of debt to value satisfactory throughout the plan;

    4. Are the debtor's financial projections reasonable and sufficiently proven, or is the plan feasible;

    5. What is the nature of the collateral, and is the value of the collateral appreciating, depreciating, or stable;

    6. Are the risks unduly shifted to the creditor;

    7. Are the risks borne by one secured creditor or class of secured creditors;

    8. Does the plan preclude the secured creditor's foreclosure;

    9. Did the original loan terms provide for negative amortization; and

    10. Are there adequate safeguards to protect the secured creditor against plan failure.

131 B.R. at 398. We agree with that listing, without intending to limit consideration to those factors alone, and without intending to require courts to expressly refer to each one of them when considering proposed plans.

## CONCLUSION

Because the bankruptcy court erroneously concluded that negative amortization is per se impermissible and failed to make findings concerning the fairness of the proposed reorganization plan, we REVERSE the decision of the district court and REMAND to the district court for further remand to the bankruptcy court for further proceedings.

POOLE, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that negative amortization is not always disallowed by the bankruptcy code, and I concur in that part of the opinion. I write separately, however, because I do not believe it is either necessary or appropriate to reverse and remand in this case.

The majority rejects the district court's assessment of the reorganization plan, citing *In re Hall, Bayoutree Assoc., Ltd.,* 939 F.2d 802, 804 (9th Cir.1991) for the proposition that a district court may not make its own findings of fact. This statement is true as far as it goes, but fails to account for a district court's authority to consider issues on appeal not decided by the bankruptcy court if the issues are legal and are supported by the record. *Id.* at 804; *see also Matter of Pizza of Hawaii, Inc.,* 761 F.2d 1374, 1377 (9th Cir.1985). While the inquiry into whether the plan of reorganization is "fair and equitable" *involves* questions of fact, it is a legal determination. *In re Acequia,* 787 F.2d 1352, 1358 n. 5 (9th Cir.1986). Thus, while the district court does seem to have over stepped by making some factual findings of its own, it was within the power of that district court, and this Court, to determine whether, based on the facts as found by the bankruptcy court, the proposed plan was "fair and equitable."

Consequently, I think that it is unnecessary to reverse and remand. The district court had, and this Court has, sufficient factual findings by the bankruptcy court to draw the legal conclusion that the "negative amortization" plan, as proposed by the debtor, was not fair and equitable. The plan rejected by the bankruptcy court originally called for three years of interest-only payments at 8%, followed by two years of interest-only payments at the prevailing adjustable note rate of 3% over the Eleventh District Cost of Funds Rate, after which the claim would fully amortize over the balance of the term at the adjustable note rate. Following the bankruptcy court's denial of this plan because of its provision for negative amortization, Sierra Woods filed a First Amended Plan of Reorganization proposing payments to Great Western Bank over five years at interest-only payments based on the prevailing note rate (3% over Eleventh District Cost of Funds Rate), after which the claim would fully amortize over a period of time extending ten years

beyond the present maturity date of the note. The bankruptcy court found, however, that even this plan would not give Great Western Bank value, and thus provided Great Western with an interest rate of 4.5% over the 11th District Cost of Funds. The increased rate was necessary because the court found that:

> Great Western's second position is inherently at greater risk. The equity cushion ahead of it is approximately 10% and risk of default and failure to consummate the plan will bear the heaviest on it. Also to be considered is that the physical deterioration of the apartment complex has been significantly arrested and improved since the petition has been filed. However, the debtor's cash flow projection only covers current maintenance and no provision is made therein for deferred maintenance and repairs.

Thus the rejected plan, less favorable to Great Western than the First Amended Plan of Reorganization, would certainly have also been rejected by the court for failing to return present value.

Even had the interest rate in the original plan been set at market rate, that would only have aggravated the deferral and accrual of interest, resulting effectively in a full value loan to Sierra Woods, and have ultimately led to a deficiency which would have entirely consumed Great Western's equity cushion. Approval of a plan calling for negative amortization under such circumstances might itself constitute an abuse of discretion. Analyzed under the ten factors listed in the majority opinion, such a plan would (3) not have a satisfactory debt-to-value for a significant portion of the life of the loan, (4) not have reasonable financial projections in light of the inability to provide for deferred maintenance and repairs, (6) unduly shift the risks to Great Western, (7) cause Great Western to bear the risks, and (9) contravene the original loan terms which did not provide for negative amortization. Furthermore, the court could reasonably find that (2) the amount of the proposed deferral is not reasonable.

Based on the findings of fact made by the bankruptcy court, the district court was correct in concluding that the original plan calling for negative amortization would not have been fair and equitable. As a result, the failure of the bankruptcy court to conduct a hearing on the plan constituted harmless error. Bankr.Rule 9005, 11 U.S.C.A.; *see Kane v. Johns–Manville Corp.*, 843 F.2d 636, 648 (2nd Cir.1988). Because reversing and remanding now would unnecessarily prolong the bankruptcy proceedings to the prejudice of the creditor, I respectfully dissent.