**In re Gary Ronald PEREZ, Debtor.**

**Frank EVERETT, Appellant,**

v.

**Gary Ronald PEREZ, Appellee.**

**No. 92–15971.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 5, 1993.

Decided July 27, 1994.

Barbara Peyton, Peyton & Associates, Sacramento, CA, for appellant.

Michael A. Peritore, Sacramento, CA, for appellee.

Before: KOZINSKI, O'SCANNLAIN, Circuit Judges, and ZILLY,* District Judge.

Opinion by Judge KOZINSKI; Dissent by Judge ZILLY.

---

* The Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation.

KOZINSKI, Circuit Judge.

In this appeal from an order approving a Chapter 11 reorganization plan, we confront the iron maiden of bankruptcy reorganizations—the dreaded cram-down.

## I

This case arises out of a personal Chapter 11 petition filed by the debtor, Gary Ronald Perez. The estate is not large, and neither is the claim of the objecting creditor, Frank Everett. Nevertheless, the case has generated a fair number of difficult legal issues and more than a little acrimony. Perhaps both consequences are endemic to a legal process so complex and malleable that, as happened here, even experts are led astray.

Perez makes his living buying, renovating and selling income property, and owning and managing two Jimboy's Tacos franchises. He hired Frank Everett to supervise the remodelling of one of the franchises. After the work was completed, the two had a falling out and Everett sued to get paid. Everett won but Perez parried by filing a Chapter 11 petition.

Perez proposed two successive plans of reorganization which the bankruptcy court rejected, the first because it unfairly discriminated against Everett and the second because it did not justify Perez's retained interest. Before us now is Perez's third plan ("Plan III"). As required in Chapter 11 reorganizations, Perez's plan divided the creditors into classes based on the nature of their claim. *See* 5 Lawrence P. King, *Collier on Bankruptcy*, ¶ 1122.03[1][b] (15th ed. 1994). Perez put governmental units claiming back-taxes in Class I, officers of the estate seeking administrative expenses in Class II and secured creditors in Class III. He then put Everett, along with the six other general unsecured creditors, in Class IV. *See* BAP ER, doc. 16, at 4 (Debtor's Third Amended Plan of Reorganization). Because Everett's claim was listed as $30,000.00, *id.* at 8, while the sum of the other unsecured claims was $20,400.00, *id.*, Everett was the

controlling member of the class.[1] As to creditors in Everett's class, Plan III called for a payment of the full amount of their claims over the course of sixty-seven months.

Anxious, no doubt, to put the bankruptcy process behind them, all but one of Perez's creditors—including all the other creditors in Everett's class—voted to approve the plan. Only Everett voted against it, but this was enough to cause his class to reject the plan.

Even so, the bankruptcy court approved Plan III, invoking the Code's cram-down provisions which empower it, in certain closely-defined circumstances, to approve a plan over the objection of a class of creditors. Everett appealed and the Bankruptcy Appellate Panel ("BAP") affirmed in an unpublished disposition.

■ Undaunted, Everett appeals again, raising several objections to the bankruptcy court's order approving Plan III. First, he argues that the cram-down is improper because it is not "fair and equitable" as required by 11 U.S.C. § 1129(b). Everett further claims that the five year maximum which section 1322 imposes on the period for payments in Chapter 13 reorganization plans also applies here. Finally, he argues that the plan is defective because the debtor made inadequate disclosures, depriving creditors of information they needed to cast a meaningful vote. We consider these contentions in turn, along with several procedural wrinkles they raise. In so doing, we review questions of law de novo and findings of fact for clear error. *In re Fowler*, 903 F.2d 694, 696 (9th Cir.1990).

## II

■ A plan of reorganization can only be crammed down if it is "fair and equitable" to the objecting class. 11 U.S.C. § 1129(b). The phrase "fair and equitable" is not a vague exhortation to bankruptcy judges that they do the right thing; rather, it implements the so-called absolute priority rule under which an objecting class must be paid

---

1. Like consumers in the market, creditors vote with their dollars on whether to approve or disapprove a proposed plan of reorganization. A class only approves a plan if two conditions are satisfied: More than half its members vote for it and those in favor hold more than two-thirds of the dollar value of the class's claims. 11 U.S.C. § 1126(c).

in full before any claim or interest junior to it gets anything at all.[2]

According to Everett, Plan III violates the absolute priority rule because it gives Perez some value, without paying the objecting class in full: Although the plan pays each class member the face value of his claim, it does so over sixty-seven months without interest. Since a dollar five and a half years from now is worth much less than a dollar today, Everett argues that Plan III does not pay the unsecured creditors in full because it does not compensate them for the lost time value of their money.

■ Although this argument is far from frivolous, it was brushed aside by the BAP with the observation, "The bankruptcy court found no unfair discrimination...." ER 6.[3] This much is true, but it's not enough. A plan disapproved by an entire class of creditors must not only be nondiscriminatory; it also must satisfy the absolute priority rule. If Everett is right, the bankruptcy court erred in approving Plan III.

A. Perez, however, argues we needn't decide whether Everett is right. He claims Everett should be foreclosed from raising this argument because he never called the absolute priority rule to the bankruptcy court's attention. This, Perez suggests, is tantamount to failing to object at trial and then seeking to raise the issue on appeal.

■ It is true that in bankruptcy proceedings, as in other types of cases, an argument must be presented to the bankruptcy court before it may be considered on appeal. *See In re Southeast Co.,* 868 F.2d 335, 339–40

(9th Cir.1989). However, this rule is applied more flexibly in the bankruptcy context to reflect the reality that bankruptcy proceedings are not precisely analogous to normal adversary litigation.[4] The principal reason we require parties to raise an issue in the trial court is to give that court an opportunity to resolve the matter and, hopefully, avoid error. Also, when matters are first raised in the trial court, it's possible to develop the record as needed to present the issue properly on appeal. In normal adversarial litigation, neither the trial judge nor opposing counsel have the responsibility to raise issues a party fails to raise; if the affected party fails to object, the issue never comes before the court. The matter is different in bankruptcy proceedings where debtors-in-possession and trustees have a responsibility to raise certain issues, and the court itself must pass on those issues, whether or not they're specifically put in dispute.

■ One such situation arises in bankruptcy reorganization or liquidation proceedings, where the debtor-in-possession or trustee has an affirmative duty to propose a plan that complies with the requirements of the bankruptcy code, and the court may only approve the plan if "[t]he proponent of the plan complies with the applicable provision of [Title 11]." 11 U.S.C. §§ 1129(a)(1) & (a)(2). Perez was well aware of this responsibility, making the customary representation to the bankruptcy court: "The debtor's Third Amended (Corrected) Plan of Reorganization complies with all applicable provisions of Title 11 of the United States Bankruptcy

---

2. The precise statutory definition of fair and equitable, as applied to a class of unsecured creditors, is as follows:

[T]he plan provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property.

11 U.S.C. § 1129(b)(2)(B).

3. The BAP also noted that the plan pays objecting creditors as much as they would receive in a liquidation, the requirement imposed by section

1129(a)(7). While every Chapter 11 reorganization plan must meet this standard (whether or not there's a cram-down), this is sufficient only where an individual creditor—rather than an entire class of creditors—objects to the plan. In contrast, where a class objects, the plan must also meet the requirements of section 1129(b) mentioned above: First, it must not discriminate unfairly; and second, it must be "fair and equitable"—that is, it must comply with the absolute priority rule.

4. There are certain proceedings within bankruptcy called "adversary proceedings," *see* 9 Lawrence P. King, *Collier on Bankruptcy* at pt. VII, and these are governed by normal litigation rules.

Code." Appellee's ER, doc. 6, at 1. In making this representation and seeking confirmation of Plan III, Perez placed squarely before the bankruptcy court the plan's compliance with applicable sections of the Code.

One important question—perhaps the *most* important question—when seeking confirmation of a plan that has been disapproved by an entire class of creditors, is whether there is a proper cram-down. In certifying that the plan complies with the requirements of the Code, Perez was representing that the cram-down was proper and the court, in turn, was required to satisfy itself that this was the case.[5]

We do not suggest, of course, that a creditor may raise for the first time on appeal any issue that may have been implicitly decided by the bankruptcy court in approving a plan of reorganization. The plan may present a variety of subsidiary issues that cannot be resolved without further development of the record—something a reviewing court generally may not do. *See Great W. Bank v. Sierra Woods Group*, 953 F.2d 1174, 1176 (9th Cir.1992) (when reviewing decision of bankruptcy court, district court may not make its own factual findings). But, whether there has been a proper cram-down after an entire class of creditors has objected is a central legal issue that can generally be resolved on the record as presented. *See In re Acequia, Inc.*, 787 F.2d 1352, 1358 & n. 5 (9th Cir.1986) (the meaning of "fair and equitable" is a legal determination even though it involves questions of fact); *see also In re Hall, Bayoutree Assocs., Ltd.*, 939 F.2d 802, 804 (9th Cir.1991) (district court reviewing bankruptcy appeal may consider issues not raised on appeal if they are purely legal and fully supported by the record); *Matter of*

*Pizza of Hawaii, Inc.*, 761 F.2d 1374, 1377 (9th Cir.1985) (district court has discretion to consider on appeal arguments not presented to bankruptcy court). Like the BAP before us, then, we find it appropriate to address the issue.

**B.** The question then is, has Perez carried the burden of showing that Plan III satisfies the absolute priority rule? This rule precludes the bankruptcy court from approving a plan that gives the holder of a claim anything at all unless all objecting classes senior to him have been paid in full. 11 U.S.C. § 1129(b)(2)(B). Because claims of equity holders are always junior to claims of creditors, this means that a bankruptcy court may not approve a plan that gives the debtor any interest in the reorganized estate unless the plan provides for the full payment of claims of creditors in the objecting class.

Under Plan III, Perez clearly retains an interest in the estate: He "retain[s] ... control and possession" of the estate's property and "continue[s] ... to operate the business." BAP ER, doc. 16, at 6. He also gets a living allowance of $2000 per month so long as he generates enough profit to pay the secured creditors. *Id.* at 7.

Given the debtor's retained interest, Everett and those in his class were entitled to one hundred cents on the dollar. But what does this mean when a class is paid off over time? Is it enough for the class to receive the nominal value of what is owed to it, even though the present value of the payment stream is less than the full amount of the debt? Clearly not. As we recently held in *In re Johnston*, 21 F.3d 323, 329 (9th Cir.1994), a cram-down may proceed only if the objecting class of creditors is paid full present value.[6] In other words, such credi-

---

**5.** The burden of proposing a plan that satisfies the requirements of the Code always falls on the party proposing it, but it falls particularly heavily on the debtor-in-possession or trustee since they stand in a fiduciary relationship to the estate's creditors. *See* 11 U.S.C. § 1107(a). As the Supreme Court put it, "[I]f a debtor remains in possession ... the debtor's directors bear essentially the same fiduciary obligation to creditors and shareholders as would the trustee for a debtor or out of possession." *CFTC v. Weintraub*, 471 U.S. 343, 355, 105 S.Ct. 1986, 1994, 85 L.Ed.2d 372 (1985); *see also Wolf v. Weinstein*, 372 U.S.

633, 649–652, 83 S.Ct. 969, 979–81, 10 L.Ed.2d 33 (1963); *In re Intermagnetics Am., Inc.*, 926 F.2d 912, 917 (9th Cir.1991) ("Officers of a debtor-in-possession are officers of the court because of their responsibility to act in the best interests of the estate as a whole and the accompanying fiduciary duties.").

**6.** In *In re Johnston*, unlike here, the bankruptcy court had made findings sufficient to satisfy this present value requirement. *See id.* at 329–30.

tors must be paid interest for the post-confirmation time value of their money.

This is entirely consistent not only with common sense, but also with the Supreme Court's guidance and our earlier rulings in closely analogous situations. *See United Sav. Ass'n v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 377, 108 S.Ct. 626, 633–34, 98 L.Ed.2d 740 (1988) (noting that "value, as of the effective date of the plan" language in section 1129(b)(2)(A)(i)(II) requires present value analysis); *In re Camino Real Landscape Maintenance Contractors, Inc.*, 818 F.2d 1503, 1505 (9th Cir.1987) (requiring present value analysis under section 1129(a)(9)(C), which guarantees unsecured tax creditors payments "of a value, as of the effective date of the plan, equal to the allowed amount of such claim"); *id.* at 1504 n. 1. (suggesting that analysis also applied to section 1129(b)(2)(A) and, presumably, section 1129(b)(2)(B)); *In re Fowler*, 903 F.2d 694 (9th Cir.1990) (requiring present value analysis under similar language in Chapter 12's cram-down provision); *see also* 5 Lawrence P. King, *Collier on Bankruptcy* ¶ 1129.03[4][f][i]; *In re Blankemeyer*, 861 F.2d 192 (8th Cir.1988) (plan paying unsecured claim over twenty years without interest violates 1129(b)(2)(B)(i)); *Debentureholders Protective Comm. of Continental Inv. Corp. v. Continental Inv. Corp.*, 679 F.2d 264 (1st Cir.1982) (reorganization plan for solvent debtor that doesn't include interest on unpaid installments of interest due on debentures is not fair and equitable).

**C.** Debtor's counsel argues that Everett's class will, in fact, be paid in full because the amount of the claim allowed by the bankruptcy court included an implicit award of interest. The argument goes something like this: The bankruptcy court said Everett was being paid the full amount of his allowed claim. Because the court must have known that full value means full present value, it must have implicitly allowed Everett's claim in some amount less than $30,000, so that the payments totalling $30,000 over sixty-seven months must have included interest.

The problem with this theory is that it finds no support in the record. Neither in the plan itself nor anywhere else does the bankruptcy court say that it is allowing Everett's claim in some amount substantially less than $30,000. Nor do we see any basis for the bankruptcy court to have done so. Everett's claim was a liquidated trade debt, embodied in a state court judgment. The claim might be disallowed altogether or allowed in full. But we can divine no basis for allowing the claim only in part. We do find it an odd coincidence that the court would have reduced Everett's claim so that, with interest, it would come to a round figure like $30,000. We give trial courts substantial deference for implicit fact-finding, *see, e.g., Torrisi v. Tuscon Elec. Power Co.*, 8 F.3d 1370, 1378 (9th Cir.1993); *Brooks v. Hilton Casinos Inc.*, 959 F.2d 757, 759 (9th Cir.1992), but not for phantom fact-finding.

We note also that it was the debtor who came up with the $30,000 figure, and not just in Plan III but also in Plan II. BAP ER, doc. 8, at 8. If Perez intended this as a means of challenging the amount of Everett's claim, he picked a peculiar way of going about it, hardly consistent with his fiduciary obligations to a creditor of the estate. *See* n. 5 *supra.* While the debtor may challenge any claim he believes in good faith should not be allowed, he must do so by raising the issue squarely with the court and giving the affected creditor an opportunity to respond. There is nothing in Plan III or its disclosure statement—or in the prior two plans or their disclosure statements—that would have put Everett and the bankruptcy court on notice that the amount of Everett's claim was being put in issue.

Counsel nevertheless argues that the $30,000 must contain an award of interest because Everett's proof of claim was actually for less than $30,000. *See* Appellee's Br. at 16–17. Although he pressed this argument vigorously both in his brief and at oral argument,[7] counsel is tantalizingly vague about *how much* less. A search of the bankruptcy court's claims file discloses that Everett's

7. "The Plan expressly provides that each unsecured creditor is to receive a note equal to 100% of its allowed claim. The scheduled amount of Creditor's Note is $30,000.00, which is more that [sic] the amount of his proof of claim...." Appellee's Br. at 16.

proof of claim was for $29,771.36—some $228 short of $30,000. Quite clearly, this minuscule amount—less than eight tenths of one percent of Everett's claim—cannot account for interest that would accrue during the five and a half year life of the debt; most likely the difference is the product of rounding or a minor error on Perez's part. Counsel's argument—made without disclosing the actual dollar figure of Everett's claim—suggests a much larger differential and is thus highly misleading.

We conclude that under Plan III Everett was to be paid the face amount of his debt over sixty-seven months without interest. This is the same conclusion drawn by the BAP which read Plan III as paying "Everett's class 100% of their claims over 67 months *without interest*." (emphasis added). ER 6. Unlike the BAP, we hold that this renders the plan fatally defective and that the bankruptcy court erred in approving the plan under these circumstances.[8]

While our ruling on this point is sufficient to require a reversal of the judgment under review, we proceed to discuss other issues raised by Everett, as they are likely to arise again on remand.

### III

■ Everett also contends that Perez's plan violates section 1322(c) [9] by providing a payment schedule that exceeds five years. The bankruptcy court correctly ruled, however, that "11 USC Section [1322(c)] does not apply to proceedings under Chapter 11." Appellee's ER, doc. 10 at 3.[10] Congress expressly resolved this question in 11 U.S.C. § 103(h), which says that "Chapter 13 of this title applies only in a case under such chapter." In other words, section 1322(c) doesn't apply to Chapter 11 reorganizations and so

Everett's section 1322(c) claim is without merit.

### IV

Everett also argues that Perez has failed to disclose "adequate information" about the plan under section 1125(a), which requires the debtor to provide "information ... that would enable a hypothetical reasonable investor ... to make an informed judgment about the plan." 11 U.S.C. § 1125(a).

**A.** Before addressing this argument, we must first consider whether Everett's appeal of this issue is timely. Under Bankruptcy Rules 8001 and 8002, a party waives appeals of a final order of the bankruptcy court by failing to file a notice of appeal within ten days. It's undisputed that Everett did not file a notice after the order approving Perez's disclosure statement (the "disclosure order"), though he did file one after the order confirming the reorganization plan (the "confirmation order"). Perez claims the disclosure order was final. If he's right, Everett waived any errors in it by failing to file a timely notice.

"To determine what is appealable as a final judgment in bankruptcy proceedings, this court has ... 'adopted a test that emphasizes the need for immediate review, rather than whether the order is technically interlocutory.'" *In re Allen*, 896 F.2d 416, 418 (9th Cir.1990) (quoting *In re 405 N. Bedford Dr. Corp.*, 778 F.2d 1374, 1377 (9th Cir.1985)). In this case, reviewing approval of a disclosure statement immediately is not merely unnecessary, it is premature. As a general matter, the inadequacy of disclosure can only injure a creditor if the plan is eventually confirmed. But, just because the bankruptcy court has approved the disclosure statement doesn't mean the plan will be approved. The creditors still have to vote, and the bankrupt-

---

**8.** We also find no evidence that the plan provides interest for the interval between the petition and confirmation even though such interest has priority over equity under section 726(a). *Compare* 11 U.S.C. § 726(a)(5) (interest to creditors) *with* 11 U.S.C. § 726(a)(6) (payments to debtor).

**9.** This provision states:
The plan may not provide for payments over a period that is longer than three years, unless

the court, for cause, approves a longer period, but the court may not approve a period that is longer than five years.
11 U.S.C. § 1322(c).

**10.** The BAP never addressed this claim either. We infer that, by affirming the judgment confirming Plan III, it considered and implicitly affirmed this ruling of the bankruptcy court.

cy court still must determine that the plan complies with the Code. In this very case, the first two disclosure statements were approved only to be followed by disapproval of the plan. Before the bankruptcy court passes on the plan, there is no way of knowing whether the allegedly inadequate disclosure prejudices anyone. At the same time, the issue of whether disclosure was adequate is in no way rendered moot by approval of the plan and is fully reviewable in an appeal from such an order.

 Like the Fifth Circuit, therefore, "We are not persuaded that a bankruptcy court order approving a disclosure statement is a final order for purposes of appeal." *Matter of Texas Extrusion Corp.*, 844 F.2d 1142, 1154 (5th Cir.1988). We hold that the confirmation order—not the disclosure order—triggers the deadline for notices of appeal on "adequate information" issues under section 1125(a). As Everett filed a notice of appeal within ten days of the confirmation order, his appeal was timely.

 **B.** Before reaching the merits, we must also ensure Everett has standing to raise this issue. To have standing, a party must show more than just wrongdoing by someone else; he must show that the alleged wrongdoing adversely affected *him.* In other words, he must show he suffered an "injury in fact." *Lujan v. Defenders of Wildlife,* — U.S. —, —, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992); *Warth v. Seldin,* 422 U.S. 490, 508, 95 S.Ct. 2197, 2210, 45 L.Ed.2d 343 (1975).

One obvious injury from inadequate disclosure is, in essence, being tricked: "I wouldn't have voted the way I did," one could complain, "had I known the true facts." Since Everett voted against the plan, he can't complain on this ground. But Everett may well

have been injured in another way. If other creditors were tricked—and voted for the plan only because they didn't know the facts—then Everett too has been injured because he was denied the information he might have used in persuading other creditors to vote against the plan. Everett can claim, therefore, he would have had a better shot at defeating the plan if Perez had made full disclosure.[11] Everett thus has standing to contest the adequacy of disclosure even though he voted against the plan.

**C.** The BAP too reached the merits of this claim and ruled as follows:

Everett relies on various contradictions, omissions, and provisions in debtor's schedules, plans, disclosure statements, and various other pleadings. However, those matters *appear to have been* addressed and resolved through the confirmation process.... Our review *discloses* no clear error, nor any basis for a different valuation of debtor's assets.

ER at 6 (emphasis added).

 We're not quite sure what to make of the BAP's disposition. Did the bankruptcy court resolve the matters Everett complains of or not? To say these issues "appear to have been addressed" suggests the BAP was unsure. But uncertainty can never be a basis for affirming a ruling below, unless the uncertainty is caused by the party challenging the ruling.

In this case, the BAP may well have concluded that Everett presented a record inadequate for ruling on his disclosure claim. In fact, Everett's counsel hasn't presented us with all the materials we've needed to resolve this dispute, nor has she included the required citations to the record in her briefs. *See* Fed.R.App.P. 28(e); Ninth Cir.R. 28–2.8.[12] The record here thus leaves much to

---

**11.** We need not decide whether a creditor who voted against the plan can object to inadequacies in disclosure that affected no other creditors. Here the inadequacies alleged could well have affected creditors other than Everett. Everett, for example, complains that the disclosure undervalues some of Perez's assets, *see* Appellant's Br. at 11–19, and improperly excludes others, *see id.* at 19, all of which suggests Perez will come out of bankruptcy better off than he's admitted. If true, this would have been of interest to other

creditors, who might have withheld their approval to pressure Perez for a sweeter deal.

**12.** We are mindful that litigating a $30,000 claim in bankruptcy court and through two levels of appeal after first having litigated it on the merits in state court can eat up much of the judgment to be recovered. Nevertheless, the parties must comply with our rules sufficiently to enable us (and the BAP) to examine those materials that bear on their arguments.

be desired, and we have held that failure to present a sufficient record can itself serve as a basis for affirmance. *See, e.g., Lowery v. United States*, 258 F.2d 194, 196 (9th Cir. 1958) ("Since appellant has seen fit to proceed with his appeal on the wholly inadequate record we have described, the judgment must be and is affirmed."). If that were the BAP's rationale, we would be inclined to affirm. But the BAP said something quite different; it noted that whatever disclosure problems there may have been "appear to have been ... resolved through the confirmation process."

This is inadequate not only because it gives us no assurance that the BAP actually satisfied itself this was the case, but also because there is no explanation *how* the confirmation process may have resolved the issues Everett raises. Nor is it intuitively obvious. Everett complains that Perez provided inadequate, false or contradictory information in the disclosure statement supporting Plan III, which then prevented him (and perhaps other creditors) from making informed decisions about the plan. That the plan is later confirmed would seem to reinforce this argument, not dispose of it.

Because the issue is not insubstantial, we remand to the BAP for a fuller consideration of the matter, or at least a fuller statement of its reasons for rejecting Everett's claim that disclosure was inadequate.[13]

## V

This case and others like it raise troubling doubts about the efficacy and fairness of our bankruptcy process. Almost five years ago, Everett secured a judgment against Perez for a trade debt. Having hired a lawyer to enforce his rights in state court, he found himself blocked from collecting on the judgment because of federal bankruptcy proceedings. This was no coincidence. Perez's disclosure statement reveals that "the major contributing factor" causing him to file was "the financial difficulties incurred as a result of" Everett's lawsuit and judgment. BAP

ER, doc. 13, at 3. The bankruptcy then led to more delay, more attorney's fees, more aggravation, while Perez continued operating his business unmolested. Rather than using the opportunity provided by the bankruptcy process to work out a plan for paying his just debts fairly, Perez has now proposed three plans, all of which have proved inadequate for failing to secure Everett's rights. With each step, the day on which Everett will see his money recedes into the distance, while he has had to keep paying a lawyer to represent his interests. The natural reluctance of most creditors to do just that is an incentive for many a debtor to prolong and complicate bankruptcy proceedings. The heavy scent of manipulation is in the air; vigilance on the part of the courts and, most especially, of the lawyers and other professionals hired by the estate, is imperative if the process is to operate fairly.

None of the repeat players in the bankruptcy system have covered themselves with glory in this case. The bankruptcy court and then the BAP approved a plan that violated section 1129(b)'s absolute priority rule, delaying final resolution of the case by three years, perhaps more. We are disappointed by the BAP's failure to even address the absolute priority issue and its cursory handling of the other issues presented to it. *See* pp. 1217–18 & n. 10 *supra*. But we are most disappointed in the estate's counsel, who is responsible for proposing and seeking confirmation of the three failed plans. How to deal with a dissenting creditor who holds the controlling interest in his class is not, after all, that difficult or complicated a matter: The creditor must be bought off, by giving him (and those similarly situated) a sufficient stake in the proposed plan so that they'll be induced to vote yes; or, failing that, the dissenting class must be crammed down—a somewhat complicated procedure but hardly beyond the competence of someone appointed to serve as debtor's counsel.

Counsel for the estate, nevertheless, has now proposed three plans that do not comply

---

**13.** As we have noted, resolution of this matter is not strictly necessary to dispose of this appeal, given that Plan III and its disclosure statement are dead as a result of our ruling above. However, as the adequacy of disclosure has been a bone of contention between Everett and Perez since Plan I, resolving the issue now may help the parties avoid further cost and delay on remand.

with the Code's requirements. He has defended Plan III on appeal before the BAP and before us despite what appears to have been his clear understanding that section 1129(b)(2) was not satisfied.[14] This conduct may well have helped Perez as an individual, but it's not clear why this benefitted the estate or how it satisfied Perez's fiduciary responsibilities.

 Counsel for the estate must keep firmly in mind that his client is the estate and not the debtor individually. Counsel has an independent responsibility to determine whether a proposed course of action is likely to benefit the estate or will merely cause delay or produce some other procedural advantage to the debtor. While he must always take his directions from his client, where counsel for the estate develops material doubts about whether a proposed course of action in fact serves the estate's interests, he must seek to persuade his client to take a different course or, failing that, resign. Under no circumstances, however, may the lawyer for a bankruptcy estate pursue a course of action, unless he has determined in good faith and as an exercise of his professional judgment that the course complies with the Bankruptcy Code and serves the best interests of the estate.

We make no finding of wrongdoing here. We simply remind counsel that his responsibility is to help lead the estate on a just, speedy, inexpensive and lawful path out of bankruptcy. Failure to live up to this responsibility may result in a reduction in allowable fees and other sanctions.

### Conclusion

We **AFFIRM** the holding below as to Everett's section 1322 claim. However, we **REVERSE** the BAP's holding as to cram-down, valuation, the debtor's insolvency and the adequacy of disclosure. We **REMAND** so the BAP may ensure Everett is compensated consistent with our present value analysis and so it may make a more thorough and definitive determination as to the remaining issues.

**AFFIRMED** in part, **REVERSED** in part, and **REMANDED**.

ZILLY, District Judge, dissenting:

I concur only with Part III of Judge Kozinski's opinion, which affirms the bankruptcy court's ruling that 11 U.S.C. Section 1322(c) does not apply to Chapter 11 proceedings. I dissent from the remaining portions of the opinion. I do not agree with Parts I and II of the opinion which hold that the debtor's third plan ("Plan III") failed to

---

14. That counsel was well aware of the statutory requirements for a cram-down is clear from his colloquy with us:

> Court: How about a finding pursuant to 11 U.S.C. 1129(b)(2)(B)—*that no creditor in a lower class can receive anything until there's been a 100% payment to every creditor in a higher class?*
>
> . . . . .
>
> Counsel: There is no finding [on that issue].
> Court: Why isn't that here? ... Why isn't that in and of itself a basis for reversal? What was the bankruptcy judge doing here?
> Counsel: You mean because there's no finding?
> Court: Yes, because there's no finding. I mean, don't we have a statute to work with? I don't understand. You're a bankruptcy practitioner. You knew full well about this problem. I mean you weren't surprised by this? Why wasn't this raised in the bankruptcy court?
>
> . . . . .
>
> Counsel: The finding of the bankruptcy court was that the debtor was entitled to a living allowance out of the plan.

> Court: And he retains the property. When all is said and paid, he will keep the property. And under 11 U.S.C. 1129(b)(2)(B) he is entitled to nothing until everyone in a higher class that's an objecting class gets paid 100 cents on the dollar.
> Counsel: That's true.
> Court: And there's no finding to that effect.
> Counsel: No. There is no finding to that effect.
> Court: Can you explain that? I mean, these things [the findings of fact and conclusions of law] were prepared by you. The debtor presents the plan ...
> Counsel: Yes, and I omitted the finding with respect to that because it wasn't at issue at any point in the proceedings.
> Court: But isn't it the debtor's responsibility to comply with the statute?
> Counsel: Yes.

satisfy the cram-down provisions of 11 U.S.C. § 1129(b)(2)(B). Nor do I agree with Part IV which remands to the BAP for consideration of the alleged inadequacy of the debtor's disclosure statement. I would affirm the decisions of the bankruptcy court and the BAP.

The bankruptcy judge entered Findings of Fact and Conclusions of Law in this case. The bankruptcy court found that "the factual assertions set forth in the Creditor's Objection to Plan of Reorganization, [and Creditor's Supplement to Objection to Plan] filed by Franklin Everett, were unsupported by admissible, competent or persuasive evidence." In addition, the court concluded that "the plan provides that with respect to each class of unsecured claims, that each holder of a claim of such class shall receive on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim ..." The findings of the bankruptcy court are "equivalent to a determination that the present value" will be paid. *See In re Johnston,* 21 F.3d 323, 329 (9th Cir.1994). In addition, the bankruptcy court found "that the Third Amended Disclosure Statement previously approved by the court is accurate and adequate." The BAP correctly concluded that the alleged disclosure inadequacies "appear to have been addressed and resolved through the confirmation process."

I do not find the conclusions of the bankruptcy court, or the BAP, to be clearly erroneous and would therefore affirm.

I write also to disapprove of the sexist reference in the first sentence of Judge Kozinski's opinion. The term "iron maiden" refers to "a medieval instrument of torture fashioned as a box in the shape of a woman, large enough to hold a human being, and studded with sharp spikes on the inside." *Random House Dictionary of the English Language,* 2nd Ed., Unabridged (1987). The use of the term unnecessarily perpetuates the misogynistic nomenclature of medieval torturers.