Carole **BAILEY** and Helen **Fulk,**
Plaintiffs–Appellants,

v.

**INTERNATIONAL BROTHERHOOD OF BOILERMAKERS, IRON SHIP BUILDERS, BLACKSMITHS, FORGERS AND HELPERS, LOCAL 374,** and International Brotherhood of Boilermakers, Defendants–Appellees.

No. 98–1497.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 24, 1998.

Decided April 23, 1999.

Terry R. Boesch (argued), Valparaiso, IN, for Plaintiffs–Appellants.

Paul T. Berkowitz (argued), Berkowitz & Associates, Chicago, IL, for Defendant–Appellee International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers & Helpers, Local 374.

Robert L. Dameron, G. Gordon Atcheson (argued), Blake & Uhlig, Kansas City, KS, for Defendant–Appellee International Brotherhood of Boilermakers.

Before CUMMINGS, BAUER, and DIANE P. WOOD, Circuit Judges.

DIANE P. WOOD, Circuit Judge.

Carole Bailey and Helen Fulk worked for many years for the International Brotherhood of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, Local 374 ("Local 374" or "the International," as appropriate). After they took

sides in a union dispute in 1987, Local 374's business manager, Salvatore Carlino, eventually chased them from their jobs in 1990. For years, they believed that they would be reinstated once Local 374 got its own affairs in order, but in September 1996, they gave up hope and filed this suit, some nine years after the initial incidents and six after the alleged constructive discharge. The district court dismissed, finding that a two-year statute of limitations barred the claims they are pursuing on this appeal. Assuming that matters developed as they have portrayed them, we certainly do not condone everything that happened, but we agree with the district court that these claims are time-barred, and we therefore affirm its judgment.

## I

Bailey began working for Local 374 in 1983, and Fulk started her work there in 1971. At all times relevant to this case, Bailey worked as a secretary and Fulk as a phone operator and records clerk. In December 1987, Local 374 became involved in a labor arbitration proceeding with the union that represented its office and secretarial staff (the Office and Professional Employees International Union, or OPEIU, Local 28). After Bailey testified unfavorably to Local 374 during that proceeding, Carlino began harassing her. He refused to speak to her even when she needed job instructions, he took away her major responsibilities as office secretary, he commented that the office would be better off without her, and finally, in April 1988, he terminated her. Upon her complaint, the National Labor Relations Board ("NLRB") decided in 1989 that this termination was based on Bailey's union activity and was therefore unlawful, and it ordered her reinstated to a substantially equivalent position. After Bailey was reinstated, Carlino continued to make life miserable for her. For example, he limited her assignments to menial tasks, denied her access to certain areas of the office, refused to give her an office key, forced her to ask

permission to use the washroom, and monitored her telephone calls.

Helen Fulk had testified on Bailey's behalf during the 1989 NLRB proceedings. For her efforts, she was rewarded with similar treatment from Carlino. He refused to speak to her, he assigned her photocopying tasks, he denied her an office key, he disconnected her telephone without any stated reason, and he systematically reduced her work assignments. After a year or so of this hostile treatment, Bailey and Fulk each capitulated and resigned in 1990, regarding themselves as constructively discharged.

The reason they now have a problem is that they did not immediately file a lawsuit. They refrained from rushing into court because other representatives of both Local 374 and the International led them to believe that they would be reinstated. Charles Vanover, a member of Local 374 who hoped to succeed Carlino as its business manager and eventually did so in October 1995, repeatedly spoke to Bailey about bringing her back to work at Local 374. Most of the promises Vanover made pre-dated his election as business manager, but in January 1997, after he indisputably possessed the actual power to rehire Bailey, he explained to her that Local 374's parent organization and co-defendant here, the International, had ordered him not to reinstate her. For her part, Fulk alleges two promises of rehire: one by Vanover when she retired from her job at Local 374 in 1990, and another sometime later (Fulk is uncertain of the date) by a representative of the International after she drove to the Chicago area to give the International information about Carlino, whom the International had begun investigating.

In 1996, shortly before it became clear that neither woman would be rehired, Bailey and Fulk filed suit against Local 374 and the International in Indiana state court. Their complaint alleged claims for breach of employment contract, fraudulent misrepresentation, intentional infliction of

emotional distress, and wrongful termination. In October 1996, noting that the employment contract at issue was a collective bargaining agreement, the defendants removed the case to federal district court, on the theory that the state claims were preempted by the Labor Management Relations Act, 29 U.S.C. sec. 185. On September 10, 1997, eight months after Vanover had once and for all refused to rehire Bailey, Bailey and Fulk amended their complaint to add claims for tortious interference with a business relationship and wrongful refusal to rehire.

Local 374 and the International separately moved for summary judgment a month later, and the district court granted their motions on February 2, 1998. Four of the six claims, it concluded, were each governed by a two-year statute of limitations borrowed from Indiana law, I.C. sec. 34–1–2–1.5. Because the claimed injuries occurred in 1990 but the suit was not filed until six years later, the claims were time-barred. The court dismissed the remaining two claims after finding that the National Labor Relations Act preempted them and they were subject to the jurisdiction of the NLRB. Bailey and Fulk do not contest the latter findings. They appeal only the adverse finding on the four time-barred claims, arguing that principles of equitable estoppel should apply to toll the statute of limitations.

## II

On an appeal like this from a grant of summary judgment, we of course view the record and all reasonable inferences drawn from the record in the light most favorable to Bailey and Fulk. *Reid v. Norfolk & Western Ry. Co.*, 157 F.3d 1106, 1110 (7th Cir.1998). Reviewing the district court's grant of summary judgment *de novo*, *Unterreiner v. Volkswagen of America, Inc.*, 8 F.3d 1206, 1209 (7th Cir.1993), we will uphold it only if there is no disputed issue of material fact which would necessitate a trial. See Fed.R.Civ.P. 56(c); *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

■ Local 374 and the International would like to block Bailey's and Fulk's appeals at the threshold, on the ground that they have waived any argument that the statute of limitations should be tolled by failing to present it to the district court. The record confirms that Bailey and Fulk did not present to the district court as developed an equitable estoppel argument as they now press on appeal. Their briefs in opposition to the appellees' motions for summary judgment contained only the assertion that the statute of limitations should be tolled due to the "continuing wrongful acts" of the appellants, for which they cited *Cooper v. United States*, 442 F.2d 908, 912 (7th Cir.1971), as authority. *Cooper* itself only mentioned "continuing wrongful acts" as an available tolling theory in passing, and Bailey and Fulk elaborated no further in their briefs, leaving it to the district court to intuit just what "continuing wrongful conduct" meant in this context and how it might apply to this case. Nevertheless, the district court chose to address the argument on the merits:

The only alleged wrongful conduct after Plaintiffs left Local is Defendants' refusal to rehire Plaintiffs. Alleging failure to rehire does not toll a statute of limitations because to do so would effectively nullify the statute of limitations in an employee termination context. This was not the intent of the Indiana legislature because "failure to rehire" and "discharge" are specifically included in Indiana Code section 34–1–2–1.5.

■ Even though it is well settled that arguments presented for the first time on appeal are waived, *e.g.*, *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1238 (7th Cir.1997), the question here is whether that rule fits these circumstances. In our view, it does not. In this case, we have the somewhat different situation in which a party has presented a skeletal argument below, which the district court

**530**

recognized and addressed, and which the party has now fleshed out and emphasized on appeal. In this gray zone, it is helpful to consider why we have the waiver rule to begin with. One reason is to be certain that the trial court has had the first opportunity to pass on the appellant's theory and avoid error. *United States v. Payne,* 102 F.3d 289, 293 (7th Cir.1996); *In re Perez,* 30 F.3d 1209, 1213 (9th Cir.1994). Another is to avoid usurping the trial court's proper role by refusing to consider issues for the first time on appeal that require the factfinding abilities of the district judge. See *United States v. Andreas,* 150 F.3d 766, 769–70 (7th Cir.1998) (per curiam); *In re Newman,* 903 F.2d 1150, 1151 n. 1 (7th Cir.1990). Finally, proper presentation to the trial court helps ensure that we have an adequate record to review on appeal. See *Murphy v. Keystone Steel & Wire Co.,* 61 F.3d 560, 568 n. 4 (7th Cir.1995); *Perez,* 30 F.3d at 1213.

These considerations convince us that the waiver rule does not bar us from reaching the merits of this case. Although Bailey and Fulk presented the issue inartfully to the trial court, we know from its opinion that the court indeed considered the question whether Local 374's alleged failure to rehire them should toll the statute of limitations. Moreover, this question can be answered without resort to the special factfinding competence of the trial court. Finally, there is nothing undeveloped in the record that will be central to the issue before us. We therefore turn our attention to the merits of the appeal.

 Bailey and Fulk urge that the two-year statute of limitations of sec. 34–1–2–1.5, which they agree is applicable to their sec. 301 claims, should not apply strictly because Vanover's and the International's ultimately unfulfilled promises of returning them to their jobs at Local 374 dissuaded them from filing suit in a timely fashion. To toll the statute of limitations, Bailey and Fulk seek to invoke the doctrine of equitable estoppel. This doctrine, as its name implies, springs from basic

considerations of fairness, *Fields v. General Motors Corp.,* 121 F.3d 271, 275 (7th Cir.1997), and "comes into play if the defendant takes active steps to prevent the plaintiff from suing in time, as by [falsely] promising not to plead the statute of limitations." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 450–51 (7th Cir.1990); see also *Hentosh v. Herman M. Finch Univ. of Health Sciences,* 167 F.3d 1170, 1174 (7th Cir.1999); *Speer v. Rand McNally & Co.,* 123 F.3d 658, 663 (7th Cir.1997). In such a case, the defendant's ruse postpones the date at which a court will consider the injury to have accrued; the statute of limitations only begins to run once the defendant's wrongful actions to induce a filing delay have ceased. *Cada,* 920 F.2d at 451. Accordingly, if equitable estoppel were to apply here, the statute of limitations might have begun to run as late as January 1997, when Vanover informed Bailey that he would not rehire her after all. Of course, this would be four months after Bailey and Fulk filed suit, a strange time for a statute of limitations to begin to run.

 Bailey and Fulk cannot invoke equitable estoppel here for a more fundamental reason. Even taking the facts as favorably to them as we can, nothing in this record suggests that either Local 374 or the International ever intended their promises (generously assuming for the sake of argument that Vanover's promises can be attributed to Local 374 even before he became its business manager) to induce the two women to refrain from filing their complaint. As we have explained:

[A] company's attempt to rehire an employee only implies equitable estoppel when the attempt constitutes an effort to prevent the plaintiff from suing in time. The attempt to rehire, standing alone, does not create the inference that the company was trying to prevent the filing of a lawsuit. To raise this inference, a plaintiff must show something more—for instance, an offer to rehire coupled with a request not to file suit.

*Unterreiner,* 8 F.3d at 1212. Bailey and Fulk have not produced the crucial "something more" from which a trier of fact could infer a request not to file suit. Certainly neither plaintiff has indicated that any of the alleged promises of reinstatement were accompanied by a request for a release of liability or even a more informal commitment to drop any possible litigation arising out of the events of 1987–1990. In fact, as we hinted above, the timing of events tells a different story. Remember that Bailey and Fulk filed suit four months *before* Vanover made clear that Bailey, at least, would not be rehired. This shows that they were not ultimately dissuaded from legal action by Vanover's promises of rehire, because those promises were still outstanding at the time they filed suit. We also fail to see why Local 374 and the International would not have abandoned their conspiracy to string Bailey and Fulk along, had there been such a conspiracy, in 1992 once the statute of limitations had run. If the promises of rehire were just a ruse keyed to the statute of limitations, it is difficult to understand why they continued into 1997.

 Indeed, if there is "something more" here than Local 374's unfulfilled promises to rehire, it is Bailey's and Fulk's own hopes for a return to work without a lawsuit. They argue, with some truth, that a refusal to find equitable estoppel in these circumstances creates an incentive for people to dash into court at the first hint of trouble, rather than seeking to resolve problems consensually. But that point, taken to its logical extreme, would eviscerate statutes of limitations, which also serve an important purpose of placing an outer limit on legal exposure. Normally, it is the legislature that draws the balance between a plaintiff's interest in enough time to work out problems without litigation and the potential defendant's need for closure. Only in narrow circumstances, such as when the requirements for equitable estoppel are satisfied, is that balance redrawn in particular cases. See *Wheeldon v. Monon Corp.,* 946 F.2d 533,

537 (7th Cir.1991) ("[The] granting of equitable estoppel should be premised on a defendant's improper conduct as well as a plaintiff's actual and reasonable reliance thereon."). Because Bailey and Fulk have offered no evidence that Local 374 and the International engaged in conduct that was intended to induce them to delay filing suit, they are not entitled to invoke equitable estoppel of the statute of limitations, and their claims are time-barred.

Accordingly, we AFFIRM the district court's grant of summary judgment for Local 374 and the International.