**In re Jorge SANDOVAL and Lupe M. Sandoval, Debtors.**

**Donald DETERMAN, Appellant,**

v.

**Jorge SANDOVAL and Lupe M. Sandoval, Appellees.**

**BAP No. SC–94–2099–JOC.**

**Bankruptcy No. 93–11034–H13.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 18, 1995.

Decided Sept. 8, 1995.

Don Determan, appellant in pro. per.

William P. Fennell, San Diego, CA, for appellees.

Before JONES, OLLASON and CURLEY,[1] Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge:

### I. FACTS

In June, 1993, Gary Richardson, president of Southern California Law and Accounting Services ("SCLAS"), called Jorge and Lupe Sandoval on the telephone. Richardson said that he had discovered that the Sandovals were being sued by a creditor, and suggested that the Sandovals meet with him to discuss their options. Mr. Sandoval met with Richardson later that day and paid SCLAS a $500 retainer. Richardson represented himself to be an attorney, although the Sandovals later discovered that he was not. When the Sandovals were ultimately served with process in the lawsuit, the paperwork had Richardson's card attached.

The Sandovals met with Richardson a total of four times. After hearing how Mr. Sandoval's medical equipment sales business was suffering, Richardson suggested filing for bankruptcy. Because the Sandovals did not

---

**1.** Hon. Sarah Sharer Curley, Bankruptcy Judge for the District of Arizona, sitting by designation.

want to file a chapter 7,[2] Richardson explained how a chapter 13 bankruptcy worked. He told them that SCLAS would file a chapter 13 petition and prepare their 1991–93 tax returns for $5,500. The Sandovals thought that this fee was high, but signed a contract for that amount. Over the next several months, they paid SCLAS a total of $3,500 in attorneys' fees in addition to the $150 bankruptcy filing fee.

On the third visit to Richardson's office, the Sandovals met Don Determan, an attorney and CPA employed by SCLAS. Determan was the attorney assigned to the Sandoval case. His handling of the bankruptcy was incompetent. On October 7, 1993, Determan filed a chapter 13 petition for the Sandovals, even though the Sandovals' schedules clearly show that they were ineligible to file chapter 13 because they owed over $195,000 in unsecured debts. 11 U.S.C. § 109(e) (1994).[3] In addition, the Sandovals' monthly expenses were listed as $1,470.53 more than their monthly income, making confirmation of a chapter 13 plan impossible. 11 U.S.C. § 1325 (1994). Finally, Determan did not file a chapter 13 plan within 15 days of filing the petition, FRBP 3015(b), and when he did finally file a plan, it required payments for longer than the statutory limit of 60 months. 11 U.S.C. § 1322(c) (1994).

In addition to his ignorance of bankruptcy law and procedure, Determan also neglected the Sandovals' case. He did not send the Sandovals a copy of their chapter 13 plan and was unaware of the scheduled § 341 meeting. Although he did appear at the § 341 meeting (after being informed of the meeting by the Sandovals), he did not attempt to answer any of the trustee's objections to the bankruptcy filing.

As a result of Determan's failure to file a plan and due to the Sandovals' ineligibility for chapter 13, the trustee filed a motion to dismiss. The Sandovals then retained a different attorney, Thomas Gorrill. On February 18, 1994, Gorrill filed a motion asking the court to require "Southern California Law Services and/or Don Determan" to disgorge all fees the Sandovals had paid in connection with the filing of the chapter 13 petition.

At the hearing, Determan explained that he should not be required to disgorge the fees because he was merely an employee of SCLAS, was paid a set salary, and did not personally receive any "fees" from clients. He also confessed that he had no idea what the Sandovals' fee arrangement had been, how much the Sandovals had been charged, and what legal services had been rendered in their behalf. The following excerpt from the transcript is illustrative:

> THE COURT: What work did you do in connection with this particular—anything, any of the services rendered to the Sandovals?
>
> MR. DETERMAN: Well, I reviewed the petition. I'm not sure I prepared it. They've indicated—
>
> THE COURT: Well, who did all the work?
>
> MR. DETERMAN: Well, various office personnel did the work based on numbers that we indicated should be placed in there.

When asked by the bankruptcy court how many hours he had spent on the Sandovals' case, Determan said "15 to 20." But when Gorrill replied that such a simple chapter 13 petition should not have required more than three hours, Determan then said that he had spent "not more than two or three hours" preparing the petition.

The bankruptcy court ordered an evidentiary hearing, at which Determan was supposed to submit a detailed fee application, listing exactly what services were performed, who performed them, and what the charge for each service was. The court then en-

---

**2.** Unless otherwise indicated, all references to Chapters, Sections and Rules are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rules 1001, *et seq.*

**3.** At this time, an individual had to owe less than $100,000 in unsecured debt in order to qualify for filing a chapter 13 petition. The Bankruptcy Reform Act of 1994, effective October 22, 1994, amended § 109(e) to raise the amount of unsecured debt allowable from $100,000 to $250,000. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394 § 108, 108 Stat. 4106, 4111 (1994).

tered an order dismissing the bankruptcy petition, but reserving jurisdiction over the fee disgorgement issue.

The Sandovals eventually entered into a stipulation with SCLAS. At the court hearing on March 25, 1994, Gorrill stated that "[t]he settlement basically is that Southern California Law Service ... has agreed to return the fees tendered in the sum of $3,500 to the debtors ... within 60 days from today." The stipulation also required SCLAS to pay Gorrill's fees, which totalled $1,160. When the court asked Gorrill if the agreement would be reduced to writing, Gorrill responded that it would be. The court then asked Determan if that was his understanding of the agreement. Determan stated that it was. The court then told Gorrill to submit the order, and stated that it would waive lodgment of the order if the order conformed to what had been represented in court.

The order which was submitted and approved stated that, "Donald Determan and/or Southern California Law Service, jointly and severally, shall disgorge fees in the sum of $3,500 to the Debtors ... [and] shall pay attorney's fees and costs in the sum of $1,160.50 to Thomas B. Gorrill, Esq....." Because Determan objected to being jointly liable, he lodged an alternative order which made only SCLAS liable to disgorge the fees. The bankruptcy court rejected Determan's proposed order and entered Gorrill's order on April 13, 1994. Notice of entry of the order was sent to Determan.

On May 3, 1994, Determan filed a motion for reconsideration of the order, asking that his name be removed as a liable party. The bankruptcy court denied the motion as untimely. Determan then filed a "Motion to Correct Record." The bankruptcy court also denied this motion, stating in its order that "[t]his Court will not entertain any further motions by Mr. Determan to modify the prior Court order entered on April 13, 1994 which requires Mr. Determan to disgorge fees to the Debtors and pay their attorney's fees." Determan appeals the denial of the Motion to Correct Record.

## II. ISSUE

Did the bankruptcy court abuse its discretion in denying Determan's Motion to Correct Record?

## III. STANDARD OF REVIEW

■ The Federal Rules of Bankruptcy Procedure do not provide for a Motion to Correct Record. Determan's motion could be characterized as a second motion for reconsideration. A motion for reconsideration is traditionally treated as a motion to amend judgment under Federal Rule of Civil Procedure ("FRCP") 59(e). *In re Weston,* 41 F.3d 493, 495 (9th Cir.1994); *In re Curry and Sorensen, Inc.,* 57 B.R. 824, 827 (9th Cir. BAP 1986). The standard of review of a bankruptcy court's denial of an FRCP 59(e) motion or a motion for reconsideration is abuse of discretion. *McCarthy v. Mayo,* 827 F.2d 1310, 1314 (9th Cir.1987); *In re Consolidated Pioneer Mortgage,* 178 B.R. 222, 228 (9th Cir. BAP 1995).

■ Determan's motion could also be treated as an FRCP 60(b) motion for relief from a judgment or order. Fed.R.Bankr.P. 9024 (making FRCP 60(b) applicable to bankruptcy proceedings). A bankruptcy court's denial of an FRCP 60(b) motion for relief from judgment or order is also reviewed for abuse of discretion. *In re Roxford Foods, Inc.,* 12 F.3d 875, 879 (9th Cir. 1993).

## IV. DISCUSSION

Determan is apparently angered that the order holds him jointly liable to pay the Sandovals $3,500 even though he is merely a salaried employee and it was his employer, SCLAS, who collected the fees. However, the propriety of Determan's liability is not at issue in this appeal. At issue is the propriety of the bankruptcy court's denial of Determan's Motion to Correct Record.

### A. *Determan's Remedies*

#### 1. *Lodging an Alternative Order*

If Determan objected to being held jointly and severally liable, he had several remedies available. First, Determan had the right to object to the wording of the order by filing

an alternative order. He did so, but the bankruptcy judge rejected his alternative order.

### 2. *Appeal*

After entry of the order on April 13, 1994, Determan then had ten days in which to file a notice of appeal. Fed.R.Bankr.P. 8002. He did not. Therefore, he lost his right to appeal the appropriateness of the order.

### 3. *Motion for Reconsideration*

■ Determan also had ten days after entry of the order in which to file a motion for reconsideration. Fed.R.Bankr.P. 9023. Although Determan did file a motion for reconsideration, it was not filed until twenty days after entry of the order. The bankruptcy court denied the motion as untimely, and Determan did not appeal that decision.[4] The Sandovals are correct in pointing out that while a party may appeal an order denying a motion for reconsideration, the party may not appeal the underlying judgment if the 10–day appeal period has run. *In re Cleanmaster Indus., Inc.,* 106 B.R. 628, 631 (9th Cir. BAP 1989).

### 4. *Motion under FRCP 60(b)*

■ After the bankruptcy court denied his motion for reconsideration, Determan filed a Motion to Correct Record. This motion is also untimely unless treated as a FRCP 60(b) motion under Rule 9024. *See Cleanmaster,* 106 B.R. at 630. FRCP 60(b) provides: ·

> On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... (3) fraud ..., misrepresentation, or other misconduct by an adverse party ...; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

Fed.R.Bankr.P. 9024. FRCP 60(b) attempts to balance "the interest in stability of judgments with the interest in seeing that judgments not become instruments of oppression and fraud...." 9 *Collier on Bankruptcy* ¶ 9024.04 at 9024–5 (15th ed. 1995).

In his pleadings and at the hearing, Determan attempted to argue that the Sandovals were guilty of fraud or misrepresentation. He stated that he had never agreed to be personally liable and that the Sandovals had unilaterally changed the stipulation. However, the Sandovals had specifically requested in their pleading that the court find Determan and/or SCLAS liable to repay the money. In addition, Determan knew that the Sandovals had submitted an order which made him liable, and he had the opportunity to submit an alternate order (which he did), and to appeal entry of the order (which he did not). Therefore, there was no fraud or misrepresentation justifying relief under FRCP 60(b)(3).

Neither is there any evidence of mistake or inadvertence. In support of his position, Determan cites *In re Cisneros,* 994 F.2d 1462 (9th Cir.1993). In *Cisneros,* the IRS had filed a proof of claim in a chapter 13 proceeding, but the trustee was never given notice of the filing of the proof of claim. The debtors' plan called for almost 80% of their plan payments to go to the IRS, since the IRS claim was the debtors' biggest liability. Although the trustee knew that the IRS was the debtors' biggest creditor, the trustee did not receive notice that the IRS had filed a claim. As a result, the trustee distributed the plan payments to all the other creditors, paying them in full within 16 months. Neither the trustee nor the IRS ever questioned why the IRS was not getting any payments. The debtors applied for, and received, a complete discharge for "full compliance" with their plan. The IRS, however, refused to abate its tax assessments against the debtors, and petitioned the bankruptcy court to reopen the case under FRCP 60(b)(1). The IRS's motion was granted, and this decision was affirmed by the BAP and the Ninth

---

**4.** Had Determan appealed that decision, he could have argued that it was an abuse of discretion for the court not to have treated his motion for reconsideration as a FRCP 60(b) motion under Rule 9024. *See In re Cleanmaster Indus., Inc.,* 106 B.R. 628, 630 (9th Cir. BAP 1989).

Circuit. In affirming the lower courts, the Ninth Circuit held that the bankruptcy court properly vacated its discharge order under FRCP 60(b)(1). *Cisneros*, 994 F.2d at 1465–66.

*Cisneros* has no application in the instant appeal. The bankruptcy court knew that Determan did not wish to be personally liable to refund the fees, but it specifically rejected Determan's order which limited liability to SCLAS. Therefore, the bankruptcy court did not mistakenly or inadvertently enter an incorrect order.

Determan did not present any other convincing argument as to why he, as the Sandovals' attorney of record, should not be personally liable to disgorge the fees. Therefore, relief under FRCP 60(b)(6) was not justified, and it was not an abuse of discretion for the bankruptcy court to deny the Motion to Correct Record.

### B. *Ethical Violations*

Determan should consider himself lucky that he has not been sanctioned or disbarred over his conduct. The record supports a finding that he violated numerous ethical rules. Rule 1–320 of the California Rules of Professional Conduct ("CRPC") prohibits a lawyer from directly or indirectly sharing legal fees with a person who is not a lawyer. Although exceptions to this rule allow an attorney to hire nonattorneys as employees, the rule strictly prohibits an attorney from working as an employee in a company owned and operated by nonattorneys. In addition, CRPC 1–600 prohibits a lawyer from practicing law under the direction of a nonattorney. Finally, CRPC 4–200(A) mandates that the total fee charged must be reasonable and CRPC 3–110(A) provides that a lawyer shall not intentionally, recklessly, or repeatedly fail to provide competent legal services.

A similar situation arose in *In re Hessinger & Associates*, 171 B.R. 366 (Bankr. N.D.Cal.1994), where the bankruptcy court issued severe fines and sanctions against an attorney. In *Hessinger*, the "law firm" was actually owned and operated by two nonat-

torneys who hired an attorney (Hessinger) as a "front man."

> [Hessinger & Associates] hired a few young and inexperienced lawyers, but most of its work was performed by "paralegals" with little or no formal training. Within the firm, they were called "credit specialists." Their job was to lure the debtor into their offices, get them to sign a contract promising to pay the fee, then preparing and filing the bankruptcy papers. In the majority of cases, the debtor had no contact with a lawyer at all until the 341 meeting, when a Hessinger lawyer they had never met was present.

*Id.* at 368. The fees charged by Hessinger, which were set by the two owners, were typically "three times the amount normally charged by lawyers for doing those types of consumer cases." *Id.* at 369. The bankruptcy court found these practices to be gross violations of Rules 1–320, 1–600, 3–110(A), and 4–200(A) of the CRPC. *Id.* at 369–73. The bankruptcy court also reprimanded Hessinger for aiding in the unauthorized practice of law. *Id.* at 371–72. In addition to other sanctions relating to Hessinger's continued practice of the law in California, Judge Jaroslovsky fined Hessinger $100,000. Considering Determan's numerous ethical violations, his $4,660 joint liability is a nominal sanction.

### C. *Sanctions*

The Sandovals request sanctions under 28 U.S.C. § 1927. Section 1927 permits "any court of the United States" to assess sanctions composed of attorneys' fees, costs, and expenses against "[a]ny attorney or other person ... who so multiplies the proceedings in any case unreasonably and vexatiously." 28 U.S.C. § 1927 (1988). The term "court of the United States ... includes the Supreme Court of the United States, courts of appeals, district courts ... and any court created by Act of Congress the judges of which are entitled to hold office during good behavior." 28 U.S.C. § 451 (1988).

Although there is no clear consensus,[5] the majority view among the circuit courts seems

---

5. The issue is unresolved in the Seventh Circuit. *In re Memorial Estates, Inc.*, 950 F.2d 1364, 1369

(7th Cir.1991), *cert. denied*, 504 U.S. 986, 112 S.Ct. 2969, 119 L.Ed.2d 589 (1992). In 1987,

to be that bankruptcy courts are not "court[s] of the United States" as defined in 28 U.S.C. § 451. The Ninth Circuit follows this view. *In re Perroton,* 958 F.2d 889, 896 (9th Cir.1992).[6] Although *Perroton* involved application of 28 U.S.C. § 1915(a), the court's reasoning applies with the same force to 28 U.S.C. § 1927. Logic dictates that if bankruptcy courts are not "courts of the United States," then neither is the Bankruptcy Appellate Panel ("BAP"). For this reason, the BAP seemingly lacks the authority to award sanctions under 28 U.S.C. § 1927.

■ The BAP does have the authority to award sanctions for frivolous appeals under Federal Rule of Appellate Procedure ("FRAP") 38.[7] *In re Vasseli,* 5 F.3d 351, 353 (9th Cir.1993); *In re Roberts,* 175 B.R. 339, 345 (9th Cir. BAP 1994). However, under the current version of FRAP 38, sanctions may not be awarded unless the appellee files a separate motion requesting sanctions or the court gives the appellant "notice . . . and reasonable opportunity to respond." Fed. R.App.P. 38. The notes accompanying FRAP 38 indicate that "[a] statement inserted in a party's brief that the party moves for sanctions is not sufficient notice." Fed. R.App.P. 38 advisory committee notes to 1994 amendment. Therefore, the Sandoval's request for sanctions in their brief does not provide us with the proper vehicle to assess FRAP 38 sanctions against Determan.

■ Nor do we feel that Rule 9011 allows us to assess sanctions in this case. The prior version of Rule 9011 defined "court" as a "bankruptcy court" and therefore only allowed bankruptcy courts to assess Rule 9011 sanctions. The definition of "court" was changed in 1987 to "the judicial officer before whom a case or proceeding is pending." Rule 9001(4). This change was meant to allow a district court judge to assess Rule 9011 sanctions.[8] *Hedges v. Resolution Trust Corp.,* 32 F.3d 1360, 1364 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 1792, 131 L.Ed.2d 721 (1995); Fed.R.Bankr.P. 9001 advisory committee note to 1987 amendment.

However, it is not clear if the current definition of "court" includes the BAP.[9] Even assuming that the BAP has authority to use Rule 9011, the Sandovals' request for FRAP 38 sanctions does not comply with the requirements of Rule 9011, which require courts to provide parties procedural due process protections before assessing Rule 9011 sanctions. *Hudson v. Moore Business Forms, Inc.,* 898 F.2d 684, 686 (9th Cir.1990); *In re Eighty South Lake, Inc.,* 81 B.R. 580, 583 (9th Cir. BAP 1987). Procedural due process requires notice and an opportunity to be heard. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); *Hudson,* 898 F.2d at 686; *Eighty South Lake,* 81 B.R. at 583. Because the Sandovals merely requested FRAP 38 sanctions for a "frivolous appeal," Determan was not put on notice that

---

the Eighth Circuit stated that it was "questionable" whether bankruptcy courts were "courts of the United States." *In re Arkansas Communities, Inc.,* 827 F.2d 1219, 1221 (8th Cir.1987). In 1990 and 1991, the Eleventh Circuit held that bankruptcy courts were *not* "courts of the United States." *In re Davis,* 899 F.2d 1136, 1139 (11th Cir.), *cert. denied,* 498 U.S. 981, 111 S.Ct. 510, 112 L.Ed.2d 522 (1990); *In re Brickell Inv. Corp.,* 922 F.2d 696, 699–700 (11th Cir.1991). In 1994 the Tenth Circuit held the same. *In re Courtesy Inns, Ltd.,* 40 F.3d 1084, 1086 (10th Cir.1994).

The Ninth Circuit addressed this issue in 1992. After a lengthy discussion of the legislative history of 28 U.S.C. § 451, it held that bankruptcy courts were *not* "courts of the United States." *In re Perroton,* 958 F.2d 889, 890–96 (9th Cir. 1992).

6. *Perroton* has been questioned, *In re McGinnis,* 155 B.R. 294, 295–96 (Bankr.D.N.H.1993), and explicitly rejected, *In re Melendez,* 153 B.R. 386,

388 (Bankr.D.Conn.1993), by bankruptcy courts in other circuits.

7. "An appeal is frivolous when the result is obvious, or where the arguments are 'wholly without merit.' " *Matter of Hawaii Corp.,* 796 F.2d 1139, 1144 (9th Cir.1986) (citations omitted).

8. Previously, caselaw had held that district court judges sitting as bankruptcy reviewing courts could not assess Rule 9011 sanctions. *In re Akros Installations, Inc.,* 834 F.2d 1526, 1531 (9th Cir.1987).

9. Not only is "court" defined in the singular as "the judicial officer," but the BAP already has authority to assess sanctions under FRAP 38. *See Hedges,* 32 F.3d at 1364. Therefore, it is not clear if the 1987 amendment to Rule 9011 was intended to extend Rule 9011 to cases heard by the BAP.

Rule 9011 sanctions (for failure to make a "reasonable inquiry" that his claims were "well grounded in fact" and "warranted by existing law") were contemplated.

Because we have no proper vehicle for assessing sanctions against Determan, we decline to do so.

## V. CONCLUSION

We affirm the bankruptcy court's denial of Determan's Motion to Correct Record, but deny the Sandovals' request for sanctions.