**In re START THE ENGINES, INC., a California corporation, Debtor.**

**Bankruptcy No. SA 97–28364JB.**

United States Bankruptcy Court,
C.D. California.

April 7, 1998.

Joseph A. Eisenberg, Jeffer, Mangels, But-
ler & Marmaro, Los Angeles, CA, John C.
Kirkland, Weissmann, Wolff, Bergman, Cole-

man & Silverman, Beverly Hills, CA, for Michael Klein.

James Davis, Rancho Cucamonga, CA, for James Davis.

William J. Simon, Riverside, CA, for Mark DiLullo.

## MEMORANDUM OF DECISION

JAMES N. BARR, Bankruptcy Judge.

A creditor filed a motion seeking sanctions against the alleged president and attorney of a corporate debtor for the filing of a Chapter 11 [1] petition. The creditor will be awarded sanctions in the amount of $10,000.00 to be paid by the president and attorney, jointly and severally, pursuant to Rule 9011.[2]

1. Unless otherwise indicated, all Chapter, Section and Rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* and to the Federal Rules of Bankruptcy Procedure, Rule 1001 *et seq.*

2. Rule 9011 provides, in part:

(a) Signing of papers

Every petition, pleading, written motion, and other paper, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney of record in the attorney's individual name. A party who is not represented by an attorney shall sign all papers. Each paper shall state the signer's address and telephone number, if any. An unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the attorney or party.

(b) Representations to the court

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

(c) Sanctions

If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or am responsible for the violation ...

(2) Nature of sanction; limitations

A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

(A) Monetary sanctions may not be awarded against a represented party for a violation of subdivision (b)(2).

(B) Monetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned.

## I. FACTS

This case is the result of a two party dispute between Mark DiLullo ("DiLullo") and Michael Klein ("Klein") for the control of the debtor, a California corporation known as Start the Engines, Inc. ("STE"),[3] and the profits from the sale of a Hawker plane (the "Airplane"). On March 28, 1997, Threshold Technologies ("Threshold"), a California corporation controlled by DiLullo, entered into a purchase agreement with Raytheon Aircraft Company ("Raytheon") to buy the Airplane for $2.95 million. DiLullo signed the purchase agreement as the president of Threshold and he wired Raytheon a $100,000.00 deposit.[4] On June 25, 1997, STE and Klein

3. It is undisputed that STE was incorporated in August, 1996. What happened after that is unclear. DiLullo and Klein each presented evidence to prove that he is a shareholder, director and officer of STE. The question of who controls STE does not need to be decided here because there are independent grounds for sanctioning DiLullo and Davis under Rule 9011.

4. Klein actually wired the monies to Raytheon but DiLullo states that Klein paid that amount as an advance on monies owed to him.

filed an amended complaint in Los Angeles superior court against DiLullo, Threshold, and Raytheon for, among other things, breach of fiduciary duty, breach of contract and misappropriation of business opportunity (the "Los Angeles Action"). STE and Klein alleged that DiLullo was an agent of Klein and that he was hired to be the project manager for the Airplane. They further alleged that DiLullo, after learning that the Airplane could be resold for a substantial profit, tried to misappropriate Klein's $100,-000.00 deposit, the Airplane and any profits for himself.

On July 2, 1997, DiLullo countered by filing an action in San Bernardino superior court on behalf on STE, Threshold and himself against Klein, Klein Investment Group and Raytheon seeking, among other things, a declaratory judgment that he was not Klein's agent and that Klein had a duty to produce STE's records in connection with the sale of another airplane (the "San Bernardino Action"). He also sought an injunction to prevent Klein from continuing to interfere in Threshold's contract with Raytheon. DiLullo testified that he filed the San Bernardino Action to "reassert control over [STE]" and to prevent Raytheon from selling the Airplane to Klein. Klein then requested and was granted a change in venue to Los Angeles. Undaunted, DiLullo then authorized Threshold to file another complaint against Raytheon, this time in the United States district court in Kansas, seeking to enjoin Raytheon from terminating the purchase agreement for the Airplane (the "Kansas Action"). The district court issued a temporary restraining order apparently without any notice to Raytheon. After learning of the temporary restraining order, Raytheon made an oral motion to dissolve it, which was granted after Threshold refused to appear at the telephonic hearing.

On September 2, 1997, the court in the Los Angeles Action issued an order requiring DiLullo, Threshold and James Davis ("Davis"), DiLullo's attorney, to immediately deposit any funds that they received from the sale of the Airplane (the "Deposit Order"). On November 12, 1997, Raytheon sold the Airplane to Threshold who in turn sold it to Executive Aviation of Louisiana, Inc. C. ("Executive"). On November 14, 1997, STE and Klein filed an ex parte motion in the Los Angeles Action to force DiLullo, Threshold and Davis to comply with the Deposit Order. That motion was denied because Davis testified that he had not received the sale proceeds from Executive. STE and Klein filed another ex parte application for a temporary restraining order to enjoin Executive from reselling the Airplane; the hearing was set for November 16, 1997.

Two days before the hearing was to take place, STE filed a Chapter 11 petition without any schedules or a statement of financial affairs. The petition was signed by DiLullo as president of STE and Davis as STE's attorney. At the hearing for the temporary restraining order, Davis filed a notice in the Los Angeles Action alerting the parties that STE had filed a Chapter 11 petition and that the automatic stay was in effect. As a result, the state court ruled that it would not proceed until I issued an order stating that the automatic stay was inapplicable.

On November 25, 1997, Klein filed a motion to determine that the automatic stay was inapplicable. Approximately one week later, STE filed an emergency motion to extend the time to file schedules and to have Klein return corporate documents. At the hearing on Klein's motion, STE asked that its bankruptcy case be dismissed and withdrew its emergency motion. Because there was no objection to dismissal, on December 10, 1997, three weeks after STE filed its petition, I ordered the case dismissed. Now, Klein has filed the present motion seeking sanctions of $245,979.47 against DiLullo and Davis under Rule 9011 and $45,979.47 against Davis under 28 U.S.C. § 1927.[5] Klein argued that STE's petition had been filed in bad faith to delay the Los Angeles Action and to avoid comply-

---

**5.** 28 U.S.C. § 1927 provides:

Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

ing with the Deposit Order rather than for any legitimate bankruptcy purpose, and that Davis filed the petition notwithstanding the fact that he knew that he lacked authority to represent STE.

In response, DiLullo argued that STE's petition was filed in good faith to: (1) determine the ownership of STE; (2) obtain an accounting of STE's assets from Klein; and (3) protect the rights of the creditors from third party litigation; (4) consolidate the numerous actions filed by Klein on behalf of STE; and (5) assess the nature of STE's liabilities. He testified that when he learned that Klein had filed the Los Angeles Action and other actions on behalf of STE, he became concerned that STE would be incurring financial and legal debts. DiLullo stated that he could envision the day when Klein loses controls of STE and says "you're right Mark, you do own [STE]. You'll have to pay its attorney's fees and costs." He further testified that after the San Bernardino Action was "virtually dismissed" because of the change in venue, he authorized the filing of the petition to assert control over STE. Finally, he testified that the San Bernardino Action was not intended to delay the Los Angeles Action because it was filed before he was served in the Los Angeles Action.

Davis joined in DiLullo's opposition and submitted a separate declaration. He testified that he had been involved in over 300 bankruptcy cases and that he had previously represented STE. He also admitted that he had been sanctioned in this district for the filing of a frivolous Chapter 11 petition. Davis contended that the relationship between DiLullo and Klein became strained after DiLullo refused to participate in Klein's scheme to defraud STE and another investor, Pierre Calalod ("Calalod"), in connection with the purchase and sale of a Gulfstream Airplane. He further testified that Klein, a wealthy man whose net worth exceeded that of DiLullo and Threshold, had a history of litigious and irrational behavior, that he lied to DiLullo in order to become an officer of STE and that he refused to give copies of STE's financial records to DiLullo and Calalod. Davis admitted that he *knew* that DiLullo was being sued in the Los Angeles Action

when the complaint was filed. He stated that he decided to file STE's petition because DiLullo, after paying $70,000.00 in legal fees and costs to protect his interest in STE, could not afford to continue litigating the Los Angeles Action.

## II. ISSUES PRESENTED

A. Whether notice of Klein's sanction motion was adequate.

B. Whether DiLullo and Davis should be sanctioned under Rule 9011 for the filing of STE's bankruptcy petition.

C. Whether Davis should be sanctioned under 28 U.S.C. § 1927.

## III. DISCUSSION

### A. Notice of the sanction motion was adequate

■ DiLullo argued that notice was defective because Klein only served his counsel, William Simon ("Simon"). Davis reiterated DiLullo's argument and also contended that STE should have been served. The basic notion of due process requires that parties be appraised of any action against them and that they be allowed a reasonable opportunity to respond. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950) (citations omitted). Under Rule 9011(c), a party against whom sanctions are being sought is entitled to notice and a reasonable opportunity to respond. Here, it is clear that DiLullo had adequate notice of the hearing because Simon filed a timely opposition and supporting declarations on his behalf. DiLullo also did not argue at the hearing that he did not have an opportunity to respond nor did he request a continuance to file supplemental pleadings. Davis's argument that STE should have been served is meritless because Klein is not seeking sanctions against STE.

### B. DiLullo and Davis violated Rule 9011(b)(1) by filing STE's petition for an improper purpose

1. *The amended Rule 9011 is applicable*

■ During the pendency of this case, Rule 9011 was extensively amended, effective

December 1, 1997, to bring it into conformity with its sister rule, Federal Rule Civil Procedure 11. United State Supreme Court Order 97–12 (the "Implementing Order"). The Implementing Order provides that the amended rule should apply to "all proceedings in bankruptcy cases thereafter commenced and, insofar as just practicable, all proceedings in bankruptcy cases then pending." Because Rule 9011 was amended shortly after STE filed its petition, the threshold issue is whether to apply the former rule or the amended rule.[6] When confronted with the same issue after the 1993 amendments to Federal Rule Civil Procedure 11, the Ninth Circuit ruled that it would be "just and practicable" to apply the amended rule because its grant of discretion to the district courts rendered it more favorable to the parties against whom sanctions were being sought. *Roundtree v. United States,* 40 F.3d 1036, 1040 (9th Cir.1994); *Moore v. Local 569 of Int'l Bhd. of Elec. Workers,* 53 F.3d 1054, 1058 (9th Cir.1995); *Simpson v. Lear Astronics Corp.,* 77 F.3d 1170, fn. 5 (9th Cir. 1996).

6. Former Rule 9011 provided:
(a) Signature. Every petition, pleading, motion and other paper served or filed in a case under the Code on behalf of a party represented by an attorney, except a list, schedule, or statement, or amendments thereto, shall be signed by at least one attorney or record in the attorney's individual name, whose office address and telephone number shall be stated. A party who is not represented by an attorney shall sign all papers and state the party's address and telephone number. The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information and belief formed after reasonable inquiry, it is well founded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law; and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation or administration of the case. If a document is not signed, it shall be stricken unless it is signed promptly after the omission is called to the attention of the person whose signature is required. If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Here, DiLullo and Davis would benefit from the application of the amended version of Rule 9011 because the imposition of sanctions under the amended rule is discretionary, there is increased flexibility on the type of sanctions and DiLullo, a represented party, cannot be sanctioned for violation of subsection (b)(2) (frivolous argument). Although the amended rule eliminates the requirement that bankruptcy courts must find that a pleading was filed for an improper purpose *and* that it was frivolous (*In re Marsch,* 36 F.3d 825, 830 (9th Cir.1994)), the overall effect of that rule is still more advantageous to both DiLullo and Davis. Therefore, I will apply the amended version of Rule 9011.[7]

2. *The filing of STE's petition was for an improper purpose in violation of Rule 9011(b)(1)*

 Rule 9011(b)(1) prohibits the filing of a pleading for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

(b) Verification. Except as otherwise specifically provided by these rules, papers filed in a case under the Code need Not be verified. Whenever verification is required under these rules, an unsworn declaration as provided in 28 U.S.C. § 1746 satisfies the requirement of verification.
(c) Copies of Signed or Verified Papers. When these rules require copies of a signed or verified paper, it shall suffice if the original is signed or verified and the copies are conformed to the original.

7. Even if former Rule 9011 was applied, the result would be the same because the threshold for sanctions are established under either version of the rule. Under the former rule, bankruptcy courts must consider both frivolousness and improper purpose on a sliding scale basis where the more compelling the showing as to one element, the less decisive need be the showing as to the other. *Marsch,* 36 F.3d at 830. Frivolousness and improper purpose are not wholly independent considerations but will often overlap. *Townsend v. Holman Consulting Corp.,* 929 F.2d 1358, 1363 (9th Cir.1990) (en banc). Here, the evidence indicates that DiLullo and Davis had no intention of reorganizing STE but that they filed the petition solely to delay the Los Angeles Action. Given the petition's flimsy legal basis and die strong showing that the petition was filed for an improper purpose, sanctions would be proper under former Rule 9011.

Because Rule 9011 is now virtually identical to Federal Rule Civil Procedure 11 and because there are no controlling authorities interpreting Rule 9011, as amended, it is appropriate to look to cases interpreting Federal Rule Civil Procedure 11 for guidance. *In re Grantham Bros.*, 922 F.2d 1438, 1441 (9th Cir.1991). Federal Rule of Civil Procedure 11 establishes an objective standard that looks to the reasonableness of the conduct under the circumstances. *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 552, 111 S.Ct. 922, 933–34, 112 L.Ed.2d 1140 (1991). In applying the objective standard, courts may infer the purpose of a filing from the consequences of a pleading or motion. Ninth Circuit courts have sanctioned parties for a variety of conduct that has been found to be improper. *See, e.g., Buster v. Greisen*, 104 F.3d 1186, 1191 (9th Cir.1997) (successive complaints based on proposition of law previously rejected may constitute harassment); *Marsch*, 36 F.3d at 830–31 (petition filed solely to delay collection of judgment and to avoid posting an appeal bond when debtor had financial ability to post bond); *In re Rainbow Magazine, Inc. (Caldwell v. Farris)*, 136 B.R. 545, 551–52 (9th Cir. BAP 1992) (petition frivolous and filed for an improper purpose where debtor's principal engaged in self-dealing and diverted assets from the estate and secured creditor); *In re Villa Madrid*, 110 B.R. 919, 923–24 (9th Cir. BAP 1990) (second bankruptcy petition was filed in bad faith and to delay proceedings).

Here, the history of litigation between the parties and the testimony of DiLullo and Davis create a strong inference that the petition was filed for an improper purpose—i.e., to delay the Los Angeles Action and to limit DiLullo's liability for legal fees and costs associated with that litigation. After Klein filed the Los Angeles Action, DiLullo filed two actions that sought to resolve essentially the same issues. Then, after both of those actions fizzled,[8] DiLullo and Davis filed STE's petition at a critical juncture in the

Los Angeles Action—when compliance with the Deposit Order was imminent. Davis then informed all of the parties in the Los Angeles Action that STE had filed bankruptcy. As a result of STE's petition, the state court refused to proceed until this Court issued an order declaring that the automatic stay was inapplicable. Therefore, the immediate effect of STE's bankruptcy filing was to delay the Los Angeles Action and to force Klein to incur additional legal fees to obtain an order that the automatic stay was inapplicable. DiLullo's contention that the San Bernardino Action was not intended to delay the Los Angeles Action because it was filed before DiLullo was served in the Los Angeles Action is disingenuous because Davis admitted that he knew DiLullo was being sued when the Los Angeles Action was filed, not served. The voluntary dismissal of STE's petition by DiLullo and Davis less than three weeks after it was filed also leads to the conclusion that STE's petition was one of three "serial filings" intended to delay the Los Angeles Action.

DiLullo and Davis provided a laundry list of reasons to support their decision to put STE into bankruptcy. However, those reasons are either unsupported by credible evidence or the evidence presented tends to prove that STE's petition was filed to protect DiLullo, not STE. For example, DiLullo argued that he authorized the filing of STE's petition to determine the ownership of STE. He was clearly protecting his own interests as a purported shareholder of STE because the determination of who the equity owners of a corporation are would not facilitate reorganization or any other legitimate bankruptcy purpose. *In re FitzSimmons*, 725 F.2d 1208, 1210 (9th Cir.1984) (purpose of a Chapter 11 case is to restructure a business' debt so that it may continue to operate). DiLullo's second argument that he wanted an accounting of the sale of the Gulfstream airplane is not convincing because he had sought essentially the same relief in the San

---

8. DiLullo conceded that the San Bernardino action was "virtually dismissed" because of the change in venue and the district court in the Kansas Action dissolved the injunction against

Raytheon after Threshold's counsel refused to participate in a telephonic hearing with Raytheon.

Bernardino Action[9] which is still apparently pending.[10] Moreover, he did not present any evidence to prove STE would be able to get a more effective or expedient accounting of the transaction in question in this Court than in state court. DiLullo's next argument that he was trying to protect creditors from exposure to third party litigation is contradicted by his admission that he was personally paying STE's legal fees and costs. Davis confirmed that DiLullo initiated the bankruptcy filing to protect himself by testifying that DiLullo had paid over $70,000.00 in legal fees in connection with the Los Angeles Action and he could not continue to fund the litigation.

DiLullo then argued that he filed the petition to consolidate the numerous actions filed by Klein on behalf of STE. That argument lacks credibility because there is no evidence that consolidation of the pending litigation was necessary or that it would have benefitted STE. Finally, DiLullo contended that the purpose of STE's petition was to determine the nature and extent of its liabilities. That argument is undermined by the lack of evidence that STE had been unable to ascertain its debts and the overwhelming evidence that STE's petition was filed to aid DiLullo in resolving his personal dispute with Klein. In all, the evidence compels a finding that DiLullo and Davis filed STE's petition for an improper purpose in violation of Rule 9011(b)(1).

### 3. *Amount of the sanctions*

■ Rule 9011 limits the amount of the sanctions to that which is sufficient to deter repetition of the conduct or comparable conduct by others similarly situated. Fed. R.Bankr.P. 9011(c)(2). The sanction may consist of, or include, directives of a nonmonetary nature, an order to pay a penalty into court, or if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation. *Id.*

Klein requested sanctions totaling $245,-979.47 against DiLullo and Davis. Of that amount, $45,979.47 is for attorney's fees and costs incurred in connection with the filing of STE's petition and $200,000.00 is to deter DiLullo and Davis from engaging in similar conduct. DiLullo and Davis argue that the amount of the sanctions are excessive and inapposite to Rule 9011(c)(2) and that Ninth Circuit case law requires courts to impose the least severe sanction necessary to deter misconduct by the parties being sanctioned and others who are similarly situated.

■ I will impose sanctions against DiLullo and Davis, jointly and severally, because they are equally culpable for filing STE's petition in violation of Rule 9011(b)(1). DiLullo is a sophisticated businessman who, by his own admission, controls at least two corporations and is involved in multi-million dollar business deals. It is clear from his testimony that he was instrumental in making the tactical decision to file the petition. However, the fact that DiLullo was directing the litigation does not exonerate Davis. An attorney for the debtor-in-possession has an independent duty to determine whether a proposed course of conduct is likely to benefit the estate. *Everett v. Perez (In re Perez),* 30 F.3d 1209, 1220 (9th Cir.1994). If an attorney does not believe that a proposed course of action benefits the estate, he must either persuade his client to take a different course or, failing that, resign. *Id.* Davis, a seasoned attorney who testified that he has been involved in over 300 bankruptcy cases, was certainly aware that he was representing STE, not DiLullo individually. This is particularly true since Davis was familiar with the historical facts in this case by virtue of his prior representation of STE and he has admitted that he has been previously sanctioned in this district for the filing of a frivolous petition.

9. DiLullo sought a judicial determination that Klein had a duty to produce STE's records and accounts of the sale of the Gulfstream airplane presumably so he could have an accounting of that transaction.

10. DiLullo's testimony that the San Bernardino Action was "virtually dismissed" is nonsensical because a change in venue does not affect a party's substantive rights.

■ Sanctions in the amount of $10,-000.00 will be paid to Klein to partially compensate him for the attorney's fees and costs [11] he incurred as a result of STE's bankruptcy and to deter DiLullo and Davis and others who are similarly situated from engaging in future misconduct. The total amount of the sanctions requested by Klein will not be awarded because that amount is excessive and would only serve to punish the parties rather than to deter future misconduct.

## B. This Court lacks authority to sanction Davis under 28 U.S.C. § 1927

■ Klein also seeks sanctions against Davis under 28 U.S.C. § 1927. That statute authorizes an award of sanctions against an attorney who unreasonably and vexatiously multiplies proceedings in a case. A bankruptcy court is not a "court of the United States" as defined in 28 U.S.C. § 451 and therefore, it lacks authority to award sanctions under 28 U.S.C. § 1927. *In re Sandoval*, 186 B.R. 490, 495–96 (9th Cir. BAP 1995). Moreover, 28 U.S.C. § 1927 cannot be utilized to sanction the filing of an initial pleading. *In re Keegan Management Co. Secs. Litig.*, 78 F.3d 431, 435 (9th Cir. 1996). This is because 28 U.S.C. § 1927 authorizes sanctions only for the multiplication of proceedings; it applies only to unnecessary filings and tactics once a lawsuit has begun. *Id.* Because the filing of the voluntary petition created a new case, that pleading cannot be the basis of sanctions under 28 U.S.C. § 1927.

## V. CONCLUSION

Klein will be awarded sanctions in the amount of $10,000.00 for the violation of Rule 9011(b)(1) to be paid by DiLullo and Davis, jointly and severally. No sanctions will be awarded under 28 U.S.C. § 1927 because bankruptcy courts lack authority to award sanctions under that statute.

---

11. *The amount of the attorney's fees and costs incurred by Klein were unreasonable. Klein was represented by two law firms who jointly filed two motions, a motion to determine that the stay was inapplicable and the present motion for sanctions, and replies to the oppositions. Klein's attorneys billed approximately 198 hours at a* blended rate of approximately $232.00 for their services. Their fees are excessive given the fact that neither motion presented complex issues of law and Klein had highly competent bankruptcy counsel to assist in the preparation of those motions.