In re Fred Lawrence **SILBERKRAUS,** Debtor, Debtor,

Thomas W. Dressler; Dressler Rein Evans & Sestanovich LLP, now known as Rein Evans & Sestanovich LLP, Appellants,

v.

The Seeley Company, Appellee.

In re Fred Lawrence Silberkraus, Debtor, Debtor,

Thomas W. Dressler; Dressler Rein Evans & Sestanovich Llp, now known as Rein Evans & Sestanovich LLP, Appellants,

v.

L.E. Coppersmith Inc., Appellee.

Nos. 01–56992, 01–56994.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2002.

Filed July 10, 2003.

Thomas W. Dressler, Dressler & La Vina LLP, Los Angeles, CA, argued the cause for the appellants. Dennis McPhillips was on the briefs.

Joseph A. Eisenberg, Jeffer, Mangels, Butler & Marmaro LLP, Los Angeles, CA, argued the cause for the appellees. Mi-

chael I. Gottfried and Thomas M. Geher, Jeffer, Mangels, Butler & Marmaro LLP, and Abraham M. Rudy and Julie B. Waldman, Weissmann, Wolff, Bergman, Coleman, Silverman & Holmes LLP, Beverly Hills, CA, were on the briefs.

Before: REINHARDT, O'SCANNLAIN, and PAEZ, Circuit Judges.

## OPINION

O'SCANNLAIN, Circuit Judge.

We must decide whether the bankruptcy court abused its discretion in imposing sanctions upon counsel for filing a Chapter 11 petition with the improper purpose of delaying state court litigation of a commercial dispute.

### I

In 1994, Fred Lawrence Silberkraus (the "Debtor") and L.E. Coppersmith, Inc. ("Coppersmith") entered into a five-year lease agreement for a 75,000 square foot industrial building located in Redondo Beach, California (the "commercial property"), with Coppersmith holding an option to purchase the property for $3,950,000 at the end of the term. The lease agreement further provided that the Debtor's real estate agent, the Seeley Company ("Seeley"), would receive a commission upon exercise of the option.

Coppersmith subsequently exercised its right to purchase the commercial property. On October 18, 1999, however, the Debtor

informed the concerned parties that escrow would not be closing as scheduled. Shortly thereafter, Coppersmith filed a complaint for breach of contract in Los Angeles Superior Court, seeking specific performance to compel the Debtor to sell the commercial property pursuant to the terms of the option agreement.

On February 8, 2000, the Debtor, represented by Dressler Rein Evans & Sestanovich, LLP ("the Dressler law firm"), filed a Chapter 11 bankruptcy petition, thereby staying the proceedings in the state court action.[1] Coppersmith and Seeley filed motions requesting relief from the automatic stay in order to proceed with their action in state court. The Debtor, in written filings signed by Thomas Dressler, opposed the motions. The bankruptcy court ruled that the state court litigation could proceed to judgment and possible appeal, but that the stay remained intact with regard to enforcement of any money judgment against the Debtor.

On June 7, 2000, the Debtor filed a proposed disclosure statement and reorganization plan. The bankruptcy court subsequently denied approval of the plan, finding that it impermissibly gerrymandered Coppersmith's and Seeley's unsecured claims into a separate class from the other general unsecured claims. The court gave the Debtor until August 8, 2000 to file an amended disclosure statement and plan, and scheduled a hearing for September 5, 2000 to assess the adequacy of the revised plan.

The deadline passed without the Debtor making any filings. As a result, Coppersmith and Seeley filed motions for sanctions in the form of attorneys' fees against the Debtor, Thomas Dressler, and the Dres-

---

1. Attorney Thomas Dressler signed the Chapter 11 petition as well as all subsequent pleadings filed in the Debtor's bankruptcy proceedings.

sler law firm.[2] At the September 5, 2000, hearings, Thomas Dressler conceded that reorganization was impossible given the objection of creditors Coppersmith and Seeley. The court subsequently converted the Debtor's bankruptcy filing to Chapter 7 after determining that there was sufficient equity to pay most, if not all, of the debt. *In re Silberkraus,* 253 B.R. 890 (Bankr.C.D.Cal.2000).

Coppersmith and Seeley then argued that the Debtor and Dressler filed the Chapter 11 petition in bad faith, specifically to obtain a more favorable forum to litigate the ongoing dispute over the commercial property. After several hours of argument on the issue, the court entered two separate orders for sanctions against the Debtor and his counsel. The district court subsequently affirmed, concluding that the bankruptcy court made extensive factual findings and that it did not abuse its discretion in imposing sanctions.

## II

Dressler claims on appeal that sanctions are improper because the bankruptcy court made several procedural errors.

## A

█ Dressler's first argument is that Seeley and Coppersmith did not comply with the sanction provisions' "safe harbor" section, which provides, "motion[s] for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion, ... the challenged paper ... is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition...." Fed. R. Bankr.P. 9011(c)(1)(A). The clear import of this language is that the mandatory 21 day safe harbor rule does not apply to the filing of the initial petition.

█ Dressler's argument, therefore, must fail because the bankruptcy court imposed sanctions based on the bad faith filing of the initial Chapter 11 petition. *See In re Silberkraus,* 253 B.R. at 903 (noting that the Debtor filed his Chapter 11 petition in order to delay the pending state court action). And to the extent that the bankruptcy court considered post-filing events such as the Debtor's inability to propose a satisfactory reorganization plan and disclosure statement, "courts may infer the purpose of a filing from the consequences of a pleading or motion." *In re Start the Engines, Inc.,* 219 B.R. 264, 270 (Bankr.C.D.Cal.1998).

## B

█ Dressler next argues that Coppersmith and Seeley did not comply with the requirement that "[a] motion for sanctions under this rule shall be made separately from other motions or requests." Fed. R. Bankr.P. 9011(c)(1)(A). It is undisputed that the motions for sanctions were filed separately from other motions or requests. Nevertheless, Dressler claims that under Rule 9011(c)(1)(A) the bankruptcy court was required to conduct a separate hearing on Coppersmith's and Seeley's motions for sanctions.

Even assuming that Dressler's approach is correct, the bankruptcy court did conduct a separate hearing. During the September 5, 2000 proceedings, the bankruptcy court began by first addressing the Debtor's failure to file an amended disclosure statement, and then turned to Coppersmith's motion to convert the case from

2. For the sake of convenience, "Dressler," as used throughout the opinion when referring to appellants, refers to both Thomas Dressler, in his individual capacity, and the Dressler law firm.

Chapter 11 to Chapter 7. Following the conclusion of this hearing, the court recessed. Later that evening, the court reconvened and conducted a separate hearing to discuss the pending motions for sanctions. Therefore, it is quite clear that even if Rule 9011(c)(1)(A) contains a separate hearing requirement, the bankruptcy court met this obligation.

### C

Dressler next contends that the bankruptcy court never made any jurisdictionally valid findings of fact in support of its decision. The bankruptcy court issued a written opinion on October 12, 2000 detailing its extensive findings, but Dressler claims that the court was divested of jurisdiction after the notice of appeal was filed on September 29, 2000.

■ It is true that the filing of a notice of appeal generally divests the trial court of jurisdiction. *See, e.g., Natural Res. Def. Council, Inc. v. Southwest Marine Inc.,* 242 F.3d 1163, 1166 (9th Cir. 2001); *Kern Oil & Refining Co. v. Tenneco Oil Co.,* 840 F.2d 730, 734 (9th Cir.1988). The purpose of this judicially-created doctrine is to avoid the potential confusion and waste of resources from having the same issue before two separate courts at the same time. But we have been careful to note that the rule "should not be employed to defeat its purposes nor to induce needless paper shuffling." *Kern Oil,* 840 F.2d at 734.

■ Accordingly, we have recognized an exception to the general rule where the

district court action aids us in our review. *See Hybritech Inc. v. Abbott Labs.,* 849 F.2d 1446, 1450 (Fed.Cir.1988) (citing *In re Thorp,* 655 F.2d 997, 998 (9th Cir.1981)). In *Hybritech,* at the end of a hearing on a preliminary injunction motion, the district court rendered an oral ruling, but expressed its intent to put its findings into writing. While a notice of appeal was filed on July 10, 1987, the district court did not enter its written findings until four days later. *Hybritech,* 849 F.2d at 1449.

The Federal Circuit in applying our law concluded that "the reduction of the oral ruling into written findings and conclusions aids our review, and ... that the Ninth Circuit would hold ... that [the] filing of [the] notice of appeal did not divest the district court of jurisdiction to subsequently enter its written findings." *Id.* at 1450; *see also Kern Oil,* 840 F.2d at 733–34 (holding that the district court had jurisdiction to enter findings even after a notice of appeal was filed because the district court judge had previously signed his findings of fact and conclusions of law).

■ We thus conclude that the bankruptcy court retained jurisdiction to publish its written findings of fact and conclusions of law because they were consistent with the court's oral findings [3] and because they aid us in our review of the court's decision.

### D

■ Dressler's final procedural claim is that the bankruptcy court's imposition of sanctions purportedly based on waiver [4] was improper under Fed. R. Bankr.P.

---

**3.** While Dressler claims that the bankruptcy court engaged in "extraordinary reversals" from the findings it made at oral argument, the only concrete example given by Dressler is that the bankruptcy court deemed the Debtor's view of 11 U.S.C. § 365(i) as frivolous in its written opinion, while expressing uncertainty over the issue at oral argument.

**4.** Citing Central District of California Local Bankruptcy Rule 9013–1(k), the bankruptcy court stated that the failure of Thomas Dressler and the Dressler law firm "to file any written Opposition to the two sanctions motions on their own behalf, as respondents, is a waiver of these attorneys' right to object to

9029(a)(2), which provides: "A local rule imposing a requirement of form shall not be enforced in a manner that causes a party to lose rights because of a nonwillful failure to comply with the requirement." But here, the bankruptcy court made extensive factual findings such as the Debtor's solvency as of the date of filing, the Debtor's improper motive of forum shopping, and Dressler's concession that reorganization was impossible over the objections of Coppersmith and Seeley. These findings clearly demonstrate that the bankruptcy court considered the merits of Dressler's arguments and rejected them. The entry of sanctions had nothing to do with Dressler's purported waiver of opposition.

### III

In addition to the procedural claims, Dressler also challenges the merits of the bankruptcy court's imposition of sanctions. By presenting a petition or paper to the court, an attorney must certify that "it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation" and that it is "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law." Fed. R. Bankr.P. 9011(b).

### A

■ In determining whether sanctions are warranted under Rule 9011(b), we

"must consider both frivolousness *and* improper purpose on a sliding scale, where the more compelling the showing as to one element, the less decisive need be the showing as to the other." *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 830 (9th Cir.1994) (emphasis in original).[5]

### 1

■ With respect to frivolousness, Dressler claims that the bankruptcy court erred because the Chapter 11 petition was well-grounded in law. But the bankruptcy court found that, even assuming that Coppersmith's option to purchase the commercial property was enforceable, the Debtor would still have had a total of $1,130,579.60 in equity in both the commercial property and his personal residence, *In re Silberkraus*, 253 B.R. at 904, and his monthly income exceeded his monthly expenses.

Dressler attacks this finding by arguing that the tax consequences from a sale of the commercial property would have rendered the Debtor insolvent, but there is no competent evidence to this effect before the court. Dressler claims that the bankruptcy court should have placed greater weight on the declarations of his expert, Herbert D. Sturman, who offered the only authenticated evidence regarding the Debtor's probable tax liability. The bankruptcy court discounted the significance of Sturman's conclusions because he had not independently verified the figures and cal-

---

the Court granting sanctions against the attorneys." *In re Silberkraus*, 253 B.R. at 910.

**5.** As an initial consideration, Dressler contends that the bankruptcy court wrongfully imposed the burden of proof upon him: "A chapter 11 debtor has the burden of proving this 'good faith' element is met, as well as the burden of proving all of the other elements governing plan confirmation." *In re Silber-*

*kraus*, 253 B.R. at 902. But, when placed in context, it is clear that the bankruptcy court was merely discussing the required elements of a Chapter 11 filing and reorganization plan. Indeed, the burden of proof applicable to a Rule 9011 motion for sanctions, as formulated by our court in *In re Marsch*, 36 F.3d at 830, was properly applied by the bankruptcy court.

culations submitted by the Debtor and could not "therefore opine as to the precise result reached in dollars and cents." *In re Silberkraus*, 253 B.R. at 896. "When an expert opinion is not supported by sufficient facts to validate it in the eyes of the law ... it cannot support a jury's verdict." *Brooke Group Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 242, 113 S.Ct. 2578, 125 L.Ed.2d 168 (1993); *see also LuMetta v. U.S. Robotics, Inc.*, 824 F.2d 768, 771 (9th Cir.1987) (discounting expert testimony with an insufficient factual basis). Dressler fails to cite to any authority or evidence besides the unfounded assertions set forth by Sturman.

Finally, Dressler contends that, pursuant to 11 U.S.C. § 365, the Debtor could have rejected Coppersmith's option to purchase the commercial property. But the Debtor could not have received any greater financial return from bankruptcy by exercising any alleged rights under § 365 because Coppersmith at the very least would have had a claim for the difference between its favorable lease rental rate and the open market rate.

We agree with the bankruptcy court that under these circumstances, bankruptcy could not have benefitted the Debtor. We thus conclude that the court did not abuse its discretion in finding the Chapter 11 filing to be frivolous.

### 2

 We also conclude that the bankruptcy court did not err with respect to the "improper purpose" prong of Rule 9011(b). Two days before the state court was to schedule a trial date to resolve the issue of Coppersmith's option to purchase the commercial property, Dressler filed his bankruptcy petition, subjecting the state proceedings to an automatic stay. As the bankruptcy court correctly stated, "it was bad faith for Debtor Silberkraus to seek to use bankruptcy to alter whatever result would have been achieved by continuing to litigate the state court action with Coppersmith and Seeley." *Id.* at 905. *See Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1444–46 (9th Cir. 1986) (holding that the strategic filing of a bankruptcy petition to frustrate and to impede a specific performance action in state court constitutes a bad faith filing).

In sum, the fact that the bankruptcy petition was filed a mere two days before the state court was to schedule a trial date on Coppersmith's claim for specific performance, the admission by the Debtor and Dressler that reorganization was impossible over the objections of Coppersmith and Seeley, and the fact that bankruptcy could not have provided more value to the Debtor than proceeding with the state court action all provide more than enough support for the bankruptcy court's determination that the Chapter 11 filing was frivolous and for an improper purpose, and thus in bad faith.

### B

Dressler's final claim on appeal is that the sanctions imposed by the bankruptcy court were excessive. Rule 9011 provides that "sanction[s] imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated," and that such sanctions may include "some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." Fed. R. Bankr.P. 9011(c)(2).

 Here, the extensive findings of bad faith made by the bankruptcy court more than adequately justify its decision to engage in fee shifting. As for the reasonableness of the amounts charged, Coppersmith and Seeley filed declarations and

invoices in support of their motions for sanctions. From these filings, the bankruptcy court found that Coppersmith and Seeley spent $115,393.67 in attorneys' fees during the seven month interval that they were fending off the frivolous Chapter 11 filing. *In re Silberkraus*, 253 B.R. at 913. The bankruptcy court further determined that sanctions of $57,696.84 were reasonable because the damages incurred by Coppersmith and Seeley were mitigated as a result of the court's conversion of the bankruptcy case to Chapter 7. *Id.* at 910.

Because it considered the nature of Dressler's actions, the costs incurred by Coppersmith and Seeley, and mitigating circumstances in making its award of sanctions, the bankruptcy court more than adequately fulfilled its obligations under Rule 9011(c)(2).

## IV

For the foregoing reasons, the district court's decision to affirm the bankruptcy court's imposition of sanctions against Thomas Dressler and the Dressler law firm is AFFIRMED.